STATE ex inf. Alvin WALKER, Prosecuting Attorney of Mercer County, Missouri, ex rel. Johnny GOODIN et al., Appellants,

v.

CAINSVILLE REORGANIZED SCHOOL DISTRICT R–1 OF HARRISON COUNTY, Missouri, et al., Respondents.

No. 47516.

Supreme Court of Missouri,

Division No. 2.

Jan. 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 8, 1960.

John E. Powell and Alvin Walker, Princeton, for appellants.

Roscoe E. Moulthrop, Bethany, for respondents.

C. A. LEEDY, Jr., Presiding Judge.

The Mercer County prosecuting attorney, at the relation of the individuals composing the board of directors of Reorganized School District R–5 of Mercer County, and at the relation of the district itself, filed in the circuit court of that county his information in the nature of quo warranto in which he challenged the authority of the respondent, Cainsville Reorganized School District R–1 of Harrison County, to exercise jurisdiction over the territory formerly comprising Cain Common School District No. 48 of Mercer County, which territory, so relators claim, is not within the territory of Cainsville Reorganized School District R–1 of Harrison County, but belongs to Reorganized School District R–5 of Mercer County. The trial court found that the territory in question was lawfully annexed to Cainsville Reorganized School District R–1 of Harrison County, and further found "that such annexation was original, prior and exclusive and that relator, Reorganized School District R–5 of Mercer County, Missouri, never acquired

any right or jurisdiction over said territory or any part thereof." It accordingly dismissed the information in quo warranto with prejudice, adjudged respondent to be legally organized in the territory comprising the former Cain district, and to have exclusive jurisdiction as a school district thereover. After an unavailing motion for new trial, relators appealed to this court. For brevity, the relator school district will sometimes be referred to merely as "R–5," the respondent school district as "R–1," and the former Cain Common School District No. 48 as "Cain."

Except for certain brief rebuttal testimony by a single expert witness (hereinafter summarized), this case was submitted in the trial court on the transcript of the record on appeal in a former case wherein the conflicting claims of R–1 and R–5 to the funds belonging to the former Cain district were litigated, State ex rel. Cainsville Reorganized School District No. 1 (relator), respondent v. Tomes (respondent), appellant; Reorganized School District R–5 of Mercer County (respondent-intervenor), appellant, Mo.App., 299 S.W.2d 892. That was a proceeding in mandamus brought at the relation of R–1 against the township trustee (Mercer County being under township organization) to compel him to pay over to R–1 money held by him as treasurer of Cain, on the ground that Cain had lawfully annexed to R–1. R–5 became a party to that action as intervenor, adopted the return of the trustee, and prayed, among other things, that the court "find and decree that the moneys and property in question and the territory formerly known as Cain Common School District #48 of Mercer County, Missouri, belongs to and is part of Reorganized School District R–5 of Mercer County." The trial court in that case found in favor of the relator therein, R–1, and against Tomes, as trustee-treasurer, and against the intervenor (R–5), and issued its peremptory writ of mandamus requiring said Tomes, as ex officio treasurer of the former Cain district, to pay over to R–1 the moneys re-

maining in his hands "as of the 22nd day of February, 1955, at which date the said common school district Number 48 of Mercer County, Missouri, also generally known as the Cain School District, was annexed to Cainsville Reorganized School District Number One of Harrison County." On appeal to the Kansas City Court of Appeals, that judgment was affirmed in the opinion to which reference has just been made.

■ R–5 claims the territory formerly constituting the Cain district by virtue of proceedings whereby its (R–5's) predecessor district, to-wit, Consolidated School District No. 2 of Mercer County, was formed. The latter was a consolidation of more than forty common school districts, and purported to include Cain. The petition for such consolidation was filed January 31, 1955, and the election at which the same was effected was held March 14, 1955. Less than a year thereafter, under a plan of reorganization approved by the State Board of Education, R–5 was duly created by the inclusion of said Consolidated District No. 2 and other components. On the other hand, R–1's claim to the same territory is based on annexation proceedings initiated by petition of Cain district voters, which proceedings culminated in a special election held in said Cain district on February 21, 1955, at which a majority of the votes cast favored annexation to R–1 (17 to 2), and the action of the board of R–1 on February 22, 1955, in receiving such territory.

"It is well-settled that where two public bodies each claim jurisdiction over the same territory by virtue of consolidation proceedings or by annexation proceedings, the one which takes the first valid step to accomplish the consolidation or annexation has the superior claim regardless of which one completes its proceedings first." Walker Reorganized School District R–4 v. Flint, Mo.App., 303 S.W.2d 200, 206, citing State ex rel. Corder School Dist. No. R–3 v. Oetting, Mo.App., 245 S.W.2d 157,.

160; State ex inf. Goodman ex rel. Crewdson v. Smith, 331 Mo. 211, 53 S.W.2d 271; Willard Reorganized School District No. 2 of Greene County v. Springfield Reorganized School District No. 12, 241 Mo.App. 934, 248 S.W.2d 435; State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762.

Admittedly, the first valid or jurisdictional step in an annexation proceeding under the statute applicable to the Cain district's purpose (Section 165.300, RSMo 1949 and V.A.M.S.) is "the reception [by the board of directors of the school district which desires to be attached to another] of a petition * * * signed by ten qualified voters of such district"—to use the language of the statute just mentioned. "Reception" is here used in the sense of act or process of receiving, and as synonymous with receipt, filing or lodgment.

The crucial and decisive question, then, is whether the filing of the petition of the Cain voters to annex to R–1 was prior or subsequent, in point of time, to that for the formation of Consolidated District No. 2, the date of the latter being, as above stated, January 31, 1955. The narrow question thus posed has thrice been before the courts (two different trial judges, and once on appeal), and in each instance those tribunals have been of one accord in the view that the filing of the petition of the Cain district voters to annex their district to R–1 was prior and anterior to the filing of the petition on January 31, 1955, with the county school superintendent for the creation of Consolidated District No. 2. On the present appeal, and on essentially the same record, we are asked to determine that question the other way. The first ground urged for so doing is that the court erred in holding that the issues had been adjudicated in the former mandamus action (State ex rel. Cainsville Reorganized School District v. Tomes, supra). It is true the pleadings raised that issue, but there is nothing in the record to indicate that the case was decided by the trial court

on any such theory. But we do not pause to examine into the merits of the assignment because we have reached the conclusion that the judgment of the trial court must be sustained regardless of whether it was based on the theory of res judicata or upon an independent examination and weighing of the evidence without reference to any claim of former adjudication.

The facts in relation to the filing of the petition of the Cain district voters to annex to R–1 (and hence its timeliness or not to preempt jurisdiction over the territory in question as against the competing, embryonic consolidation movement) are exceedingly brief. Inasmuch as the case turns on this single question, and there is no contention that any other irregularity or infirmity invalidates the annexation proceedings, our statement of facts will be limited accordingly, certain portions of which have been taken from the opinion of Judge Broaddus of the Kansas City Court of Appeals in the Tomes case, some having been lifted bodily but without resort to quotation marks, some paraphrased, and others supplemented and developed by us in the light of appellants' contentions.

In 1954 Cain, as a common school district, had, of course, a three-member board of directors (Section 165.207, RSMo 1949 and V.A.M.S.), one of whom, Charles E. Graham, testified that within a few days, "two or three days" after the 21st day of September, 1954, he circulated the petition in question which prayed for a special election to determine whether Cain would annex to R–1; that he obtained all the signatures to the petition; that he was "two or three days getting these signers;" that he then "turned it [the petition] over to the clerk, Mrs. Butler," the wife of one of the directors. He further testified positively and unequivocally that the petition was filed with the board on January 15, 1955. The original petition bearing the signatures of more than ten qualified voters of the Cain district (twenty-six, to be exact) was offered in evidence. Sandwiched in the space between the text of

the petition and the signatures are these words: "Sept 21 1954 9:00 P.M. meeting held to initiate above petition," and at the bottom of the petition, following the signatures, are the words, "Petition present Jan. 15 1955."

Minutes of a meeting of the Cain board held February 4, 1955, were offered in evidence, from which it appears that the members of the board met on that day "and accepted the petition of the qualified voters of District 48 for the annexation of said district to Cainsville Reorganized District Number One, Harrison County, State of Missouri," and directed the clerk to post notices of a special election to be held at the school house on February 21, 1955, to vote on the question of annexing the district to R–1. (The notices were posted, as directed, and the election held pursuant thereto with the resulting vote favorable to annexation, as hereinabove indicated.)

Appellants contend that the "reception" of the petition to annex did not take place until the Cain board's meeting on February 4, 1955, and that such fact appears from the above quoted portion of the minutes of said meeting. True, the minutes do recite the petition was "accepted" at that time, which term was obviously used in the sense of, and is to be construed as meaning "approved" or "held sufficient," and not as having any reference to the "reception" of the petition, which, as already indicated, means receipt, filing or lodgment thereof with the board.

Appellants sought to show by an expert witness called in rebuttal that the date appearing on the face of the petition, "Jan. 15 1955" (as the date of the presentation thereof to the board) had been changed from that of "February 4, 1955." In this connection, appellants were permitted to introduce several enlarged photographic reproductions of the questioned portion of the instrument, which, according to their expert, showed such alteration in dates. However, the trial judge openly indicated

in no uncertain terms that he was not impressed, saying at one stage, "I will say to you frankly that they [the photographs] do not mean much to me," and at another, "Well, your 'same identical date' doesn't appear sufficiently for me to believe it, but you may offer it." Upon an independent examination of these enlargements, we have reached the same conclusion as to their want of persuasive or convincing effect as proof.

This leaves the proof on the vital issue in this shape: The petition was "turned over" to the clerk of the Cain board either a few days after it was circulated in September 1954, or else it was filed on Jan. 15, 1955. Witness Graham testified he was present when the petition was filed, and on direct examination, when asked to tell the court his best judgment as to when the petition was filed, stated, "I would say it was January 15th of 55." However, on cross-examination he indicated he may have "turned it over" to Mrs. Butler, the clerk, in September 1954. (In the mandamus case R–5 raised an issue of estoppel based on the Cain board having held the petition in bad faith for an unreasonable length of time after the circulation thereof in September 1954, which issue was determined adversely to R–5, and it has not been urged again in the present case.) The petition on its face shows that it was "present[ed] Jan 15 1955," which fact, coupled with Graham's testimony as to the filing of the petition being in any event prior to January 31, 1955 (when the competing petition for consolidation was filed), sufficiently justifies the two trial courts' rulings (on the same proof) that the "reception" of the challenged petition antedated that of January 31, 1955, for the consolidation, on which relators rely. This being so, it follows that the filing of the Cain voters' petition preempted jurisdiction over the territory for the purposes of the annexation proceedings, and to the exclusion of the consolidation movement. The trial court's judgment was therefore

the correct one under the law and the evidence in the case, and it should be, and is, affirmed.

All concur.