Walter Gene GWIN, Barto L. Brown, Jr., and Earl W. Brown, doing business as Mobile Supply Company, Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 3195-63.

United States District Court
S. D. Alabama, S. D.

May 5, 1965.

in the business of manufacturing refrigerants and selling them at wholesale to distributors or suppliers, such as Plaintiffs. The manufacturers require the distributors and suppliers to pay a deposit of $12 per cylinder, which is refundable if and when the cylinder is returned to the manufacturer. The distributors and suppliers are not obliged to return the cylinders to the manufacturer, and some are not returned, in which event the manufacturer retains the deposit. In turn, the distributors and suppliers, including Plaintiffs, require their customers to pay, in addition to the price of the gas, a deposit of $12 per cylinder. This deposit, too, is refundable if and when the customer returns the cylinder. The customer may do as he pleases about returning the cylinders, and, like the distributor or supplier, he is under no obligation to return them.

3. The empty cylinders of gas are reused by the manufacturers when they are returned by the distributor or supplier, assuming that they are in re-usable condition at the time. It is standard practice in the trade for the distributors and suppliers to accept a return of empty cylinders, regardless of the source from which the customer may have obtained the cylinder, and regardless of the manufacturer of the cylinder and contents when last used. Plaintiffs customarily accept cylinders from their customers, and pay them the standard $12 deposit for each cylinder turned in by the customer, even though the customer may have obtained the cylinder from some supplier other than Plaintiffs, and even though Plaintiffs may not sell the products of such manufacturer. This is customary in the business, as any supplier can return an empty cylinder in good condition to the manufacturer, and receive the standard $12 deposit for it from the manufacturer, even though the supplier does not handle that particular line.

4. It is not unusual for a customer of Plaintiffs to want an empty cylinder to be refilled, by the customer, at his own place of business, and in such case the customer may obtain the empty cylinder from

W. Borden Strickland, Strickland & Zoghby, Mobile, Ala., for plaintiffs.

Thomas E. Twitty, Jr., Inge, Twitty, Duffy & Prince, Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

This is an action for a declaratory judgment on a policy of liability insurance, brought by Mobile Supply Company, the named insured, against Liberty Mutual Insurance Company.

## FINDINGS OF FACT

1. Mobile Supply Company is engaged in the business of selling heating and air-conditioning equipment, including gaseous refrigerants used in servicing air-conditioning units and other refrigeration equipment by air-conditioning service companies and others having a need for such refrigerants.

2. Plaintiffs do not manufacture the refrigerants which are sold by them, but purchase these gases under pressure in cylinders of various sizes from concerns

Mobile Supply Company by paying the standard $12 deposit. It makes no difference whether the cylinder is empty or full, the deposit is the same, and the transaction is handled on the same refundable deposit basis. In any instance, the customer may retain the cylinder and do with it as he pleases, or return it for the deposit.

5. When a customer obtains a cylinder of gas, or an empty cylinder, from Plaintiffs, whether the Alabama sales tax is charged upon the transaction depends upon whether the customer is a wholesaler or a retailer. If the customer has a wholesaler's tax number issued by the State Department of Revenue of Alabama, qualifying him as a wholesaler for sales tax purposes, no sales tax is charged on the cylinder or, if it is full, its contents. On the other hand, if the customer does not have a wholesaler's tax number, the sales tax is charged by Plaintiffs on the $12 deposit paid for the cylinder whether it is full or empty. If the sales tax is charged when the customer obtains the cylinder, then he is refunded the tax as well as the $12 deposit if and when the cylinder is returned for refund.

6. Mobile Gas Service Corporation is a customer of Mobile Supply Company, and obtains its bottled refrigerants from them. The cylinder with which we are concerned in this case was obtained by Mobile Gas Service Corporation from Plaintiffs on or about June 7, 1960. The cylinder was obtained for the usual $12 deposit, and $1.50 was paid for the stand. No sales tax was charged either for the cylinder or the stand since Mobile Gas Service Corporation has a wholesaler's tax number.

7. After it had obtained the cylinder from Plaintiffs, Mobile Gas Service Corporation changed the valve and thereafter filled the cylinder with ammonia gas under pressure for use in handling "complaints", that is, in servicing refrigeration equipment. The cylinder was empty when it was obtained by Mobile Gas Service Corporation from Plaintiffs on or about June 7, 1960; and thereafter Plaintiffs had no further connection or contact with the cylinder, nor did Plaintiffs sell or supply any gas that may have been subsequently used to fill the cylinder.

8. The cylinder, as modified, had been in use by Mobile Gas Service Corporation for approximately two years, when, in July 1962, it exploded, apparently as a result of exposure to the heat of the sun, and injured Leon Phillips, who, at the time, was in the employ of Mobile Gas Service Corporation. Between the date of its acquisition from Plaintiffs and the explosion injuring Leon Phillips, the cylinder had been filled and refilled with ammonia gas on may occasions by Mobile Gas Service Corporation.

9. On or about July 1, 1963, Leon Phillips commenced his action against Mobile Supply Company, E. I. DuPont de Nemours and Company, Inc., and Kennic Chemical Company, for personal injuries allegedly sustained in the accident.

10. The policy of insurance in question here was first issued by Defendant to the Plaintiffs on June 13, 1960, for a period of one year, and was thereafter reissued annually for successive one year periods on June 13, 1961, and June 13, 1962, and was in full force and effect on July 14, 1962, and throughout the period commencing June 13, 1962, and ending June 13, 1963.

11. The insurance policy in question is styled "Comprehensive General Liability Policy", and consists of the Insuring Agreements, Exclusions, Conditions, Declarations, and certain endorsements, including the "Exclusion of Products and Completed Operations Hazards" endorsement, with which we are primarily concerned in this case. This endorsement provides as follows:

"It is agreed:

"1. The definition of the term 'Products Hazard' appearing in Condition 3(c) of the policy is hereby deleted.

"2. The following definitions are added to Condition 3 of the policy:

"(c) Products Hazard—The term 'products hazard' means

goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the injury, sickness, disease, death or destruction occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such injury, sickness, disease, death or destruction occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 4 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold.

"(e) Completed Operations Hazard—The term 'completed operations hazard' means work completed by or for the named insured, including but not limited to services, material, parts or equipment furnished in connection therewith or incorporated therein, if the injury, sickness, death or destruction occurs after operations in connection with such work have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, work shall not be deemed incomplete because improperly or defectively performed or because further work may be required pursuant to an agreement; provided, further, the following shall not be deemed to be 'work' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) work for which the classification stated in division 1 of Item 4 of the declarations specifically includes completed operations. Injury, sickness, disease, death or destruction occurring away from premises owned, rented or controlled by the named insured and arising out of work which has been completed by or for the named insured and which has been put to its intended use by any person or organization, other than another contractor or subcontractor performing operations in connection with the project of which the named insured's work is a part, shall be deemed to arise out of the completed operations hazard.

"3. The policy does not apply to the products hazard or the completed operations hazard as defined herein."

## CONCLUSIONS OF LAW

1. The Court has jurisdiction in this matter under Title 28 U.S.C. § 1332.

2. The whole question in this case turns upon the interpretation of the insurance contract made between the parties.

■ 3. The general rule concerning the interpretation of a contract is stated in Liberty Mutual Insurance Company v. Hercules Powder Company, 3 Cir., 224 F.2d 293, 54 A.L.R.2d 513:

"When a party chooses the language which he puts into a form contract, in case of doubt of its effect the general rule is that it is interpreted against him. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489 [52 S.Ct. 230, 76 L.Ed. 416]."

4. The Court adopts the reasoning of Circuit Judge Goodrich in Hercules, supra:

"Numerous cases have been cited to us. This is a situation, however, where comments of courts on language not identical cannot help us much. And the reason for that is already apparent. Unless particular words have crystalized into a definite legal rule their meaning necessarily varies with time, place, occasion and the vocabulary of the user."

■ 5. An empty cylinder is not "goods or products." "Goods or products" in this case means "goods or products" sold by Mobile Supply Company or at least acquired to be sold as an integral part of their merchandise, goods and products for merchandising purposes. The container here in question was not "sold" or "handled" by the Plaintiffs so as to be excluded from coverage under the policy of insurance.

■ 6. Even though the container was obtained by Mobile Gas Service Corporation before the insurance policy went into effect, the accident occurred some two years after the issuance of the policy. The leading case of George W. Deer and Son v. Employers Indemnity Corporation, 7 Cir., 77 F.2d 175, in a similar situation, stated that there was insurance coverage although the kerosene that caused the accident was delivered before the policy went into effect. The accident in the Deer case also occurred after the policy was issued.

■ 7. The Court finds that the insurance policy covers the accident involved in this action. The "Products Hazard" and "Completed Operations Hazard" exclusions do not exclude coverage in this case.

■ 8. The Court further finds that the Plaintiffs' attorney is entitled to $600.00 for services rendered in this declaratory judgment suit.

Judgment to be entered accordingly.