258 F.Supp. 82 (1966)
Carrie Ellen TAYLOR, Plaintiff,
v.
Joseph T. BLACK, Defendant, and
Allstate Insurance Company, a corporation, Garnishee.
No. 65C 226(3).
United States District Court E. D. Missouri, E. D.
August 9, 1966.
*83 Milton Suffian, St. Louis, Mo., for plaintiff.
F. X. Cleary, St. Louis Mo., for defendant.

*84 MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
This is a garnishment proceeding in aid of an execution, removed from the Circuit Court of the City of St. Louis. Plaintiff theretofore recovered judgment against Joseph T. Black for $13,000 actual damages and $2,000 punitive damages, for injuries sustained as a result of an automobile collision on April 6, 1963. This garnishment proceeding was tried to the court.
Plaintiff is a citizen and resident of Missouri. Garnishee, a corporation, incorporated under the laws of Illinois, having its principal office and place of business in Illinois, is a citizen of Illinois. We have jurisdiction because of diversity of citizenship and the amount in controversy.
The essential issue for our determination is whether garnishee should be required to pay the judgment rendered against Mr. Black under the terms of a liability insurance policy covering Black which was admittedly issued by garnishee, or whether the insurance policy was void ab initio.
On March 25, 1963, Joseph T. Black signed two applications for insurance with garnishee, on different automobiles, one of which was involved in the collision in which plaintiff was injured. Each application contained a number of questions which were to be answered by checking the appropriate "Yes" or "No" box. One of these questions read:
"Have you or anyone in your household ever been sent notice of cancellation or refusal, or given notice of intention to cancel or refuse, any insurance similar to that applied for?"
The "No" box opposite this question was checked. The evidence is uncontradicted, and we so find, that the information contained in the application, including the answer to the foregoing question, was supplied by Black himself.
Immediately above Black's signature on the application the following appears,
"I hereby declare the facts herein to be true and request the Company to issue the insurance, and any renewals thereof, in reliance thereon."
In reliance on the truth of the statements in the application, garnishee issued its policy of liability insurance, effective March 26, 1963, insuring Black for a period of one year. The limits of liability were $25,000 for any one person, and $50,000 for any one accident. Thereafter, on July 15, 1963, garnishee wrote Black a letter declaring "void from the date of its inception" the policy issued on March 26, 1963, and denying all liability or obligation thereunder upon the ground, "We have declared such policy to be void because our investigation has revealed that, during the past two years, an insuror has cancelled automobile insurance issued to a member of your household, specifically your wife, Mrs. Nell Ruth Black." In conjunction with the cancellation, garnishee refunded the premium in full.
Under Missouri practice applicable in this Court, under Rule 69 of the Federal Rules of Civil Procedure, see United States v. Yazell, 382 U.S. 341, 355, 86 S.Ct. 500, 15 L.Ed.2d 404 (note 31), the sole issues in contested garnishment actions in aid of execution are made up of plaintiff's denial of the garnishee's answer and the garnishee's reply. Civil Rule 90.18 V.A.M.R. The so-called denial is the equivalent of the petition or complaint in an ordinary lawsuit, and, therefore, must specifically allege the ground upon which recovery is sought against the garnishee. So, too, the reply is the equivalent of the answer to the petition or complaint. Rainwater v. Wallace, 351 Mo. 1044, 174 S.W.2d 835, 839; Jenkins v. Jenkins, Mo.App., 243 S.W.2d 804, 807. In the instant proceeding, the plaintiff filed what she designated as a "return" to the garnishee's answer, but which in legal effect was a denial, and the garnishee filed what it designated as a "denial" of plaintiff's "return", the "denial" being in legal effect a return.
Plaintiff's "return", although containing some unnecessary allegations, sufficiently *85 pleaded the facts upon which recovery is sought. The garnishee's "denial" admitted the issuance of a policy of insurance to Joseph T. Black, "but states that such policy was void and of no effect because said Joseph T. Black made material, intentional and fraudulent misrepresentations in the application for said policy of insurance, and as a result thereof, said policy was cancelled and declared void ab initio."
Did Joseph Black make material, intentional and fraudulent misrepresentations in the application he signed, upon which the policy here involved was issued? Bearing upon this issue are the following facts. Joseph T. Black and Nell Ruth Jones were married July 1, 1961. Prior to her marriage, Mrs. Black had obtained a policy of liability insurance from the State Farm Mutual Automobile Insurance Company. The policy, effective December 17, 1957, was for a period of six months, apparently with a provision therein for renewal at the end of each six month period upon payment of the applicable premium and consent of the insuror. This policy has been renewed periodically, the last such renewal being for the 6-month period ending December 17, 1961.
In November, 1961, State Farm again mailed a premium notice offering to renew the Jones policy for the further period of six months. In October, 1961, Mr. Black while driving the automobile insured by State Farm struck a parked car, causing some property damage which was paid by his wife's insuror. As a result of this accident, Black was subsequently convicted of the offense of driving while intoxicated.
On December 15, 1961, after ascertaining some of the facts, State Farm wrote a letter addressed to Miss Nell Ruth Jones, the letter admittedly being received by her, advising that in accordance with the terms of her policy, it elected to cancel the policy, effective December 27, 1961, and stating further that the letter superseded the previous notice "and withdraws the offer to renew your policy which appears therein." Actually, the policy expired by its terms on December 17, 1961, no premium having been paid, and was not in effect thereafter.
At the time Mr. Black applied to Allstate for insurance coverage he was living with his wife, so that in law she was then "a member of his household." Giokaris v. Kincaid, Mo., 331 S.W.2d 633, 640, 86 A.L.R.2d 925; Kelso v. Kelso, Mo., 306 S.W.2d 534, 536, 71 A.L. R.2d 258.
Plaintiff argues that the State Farm letter to Nell Ruth Jones was not as a matter of law a cancellation notice. Her theory appears to be that since the Jones policy expired by its terms on December 17, 1961, the notice of December 15, 1961 was no more than a statement of intention to cancel the policy on December 27, 1961, and hence, actually operated to renew the policy after its December 17, 1961 expiration, in spite of the "withdrawal" of its previous renewal offer. On this premise, plaintiff contends the policy could be cancelled, pursuant to its terms, only by a 10-day notice given after December 17, 1961.
We are not impressed with plaintiff's extremely technical and unrealistic argument. Aside from the fact that the December 15th notice was considered by both parties involved, State Farm and Mrs. Black, as an effective termination and cancellation of Mrs. Black's insurance coverage, the real question is whether the notice is the kind intended to be included in the question which Black answered in the application. We are of the opinion that it was.
It may well be that State Farm was under no legal or contractual obligation to continue Mrs. Black's insurance in force for 10 days after the end of the period for which the premium paid. The fact that it mistakenly did so does not affect the true character of the notice of cancellation. Technically, as we have stated, no "cancellation" was necessary, the policy expiring by its own terms on December 17th, but neither party was a lawyer. Bearing in mind that the policy had been periodically renewed for 6month *86 periods, and that new policies were not issued, it is understandable that a layman would believe that the word "cancelled" should be used and that the policy provision about a 10-day notice must be followed.
In any event, the letter unequivocally withdrew the previous offer to renew the policy. Hence, without regard to the effectiveness of the notice to terminate the insurance as a matter of law, had an accident occurred after December 17th or even after December 27th, we find that the letter constituted a notice that State Farm "intended to cancel or refuse" the insurance provided for in the policy. The question which Black answered pertained not only to a notice of cancellation, but also a notice of intention to cancel or refuse similar insurance.
There can be no doubt that Black's representation that no similar policy issued to anyone in his household had been cancelled or refused was material to the risk. "Whenever the misrepresentation `would have, or might have, a real influence upon the underwriter, either not to underwrite at all, or not to underwrite except at a higher premium, it must be deemed material to the risk.'" Smith v. American Automobile Ins. Co., 188 Mo.App. 297, 175 S.W. 113, 114. In Minich v. M.F.A. Mutual Insurance Co., Mo.App., 325 S.W.2d 56, 58, it was held that a representation that the insured had previously had a policy cancelled was material to the risk. See also, Gooch v. Motors Insurance Co., Mo. App., 312 S.W.2d 605, 608; Berry v. Equitable Fire & Marine Ins. Co., Mo. App., 263 S.W. 884, 886; and Coonce v. National Indemnity Company, D.C.Mo., 213 F.Supp. 483, 487.
We believe and hold that Black's misrepresentation was material not only as a matter of law but as a matter of fact. It is true that the representation was correct insofar as Black himself was concerned, a fact which distinguishes the Coonce case. However, in the circumstances of the instant case the misrepresentation was not any the less material because it related to insurance which had been issued to his wife. It is apparent that had the fact of the cancellation of his wife's insurance been disclosed, Allstate would have become aware of the reason therefor, namely conduct of Black himself, driving while intoxicated, a fact which clearly would have a real influence on the insuror in determining whether or not to issue insurance to Black.
The application was not made part of the policy, nor was it either referred to or incorporated by reference therein. In this situation, under Missouri law, only a fraudulent material misrepresentation in the application constitutes ground for avoiding the policy contract. In our opinion, the evidence supporting the claim of fraud is clear, cogent and convincing. Black did not testify. On behalf of garnishee, testimony was adduced to the effect that Black was made fully aware of the questions contained in the application, and that he personally supplied the false answers. The language of the question here involved was unambiguous, and in any event there is no basis in the evidence for any finding that Black misunderstood it. His wife testified that she and her husband were living together, both at the time she received the cancellation notice of her policy and at the date of Black's application for insurance. It is difficult to believe that Black did not know of the cancellation of the notice, particularly since it was his own conduct which he should have known would place his wife's insurance policy in jeopardy. The damage he caused while driving his wife's car was paid by State Farm, and not by himself.
If, as we may reasonably infer, Black knew that the answer he gave was false, but nevertheless made the representation requesting as he did, that Allstate rely thereon, as it did, the representation was necessarily fraudulent. A further reason for our belief that Black was conscious of the falsity of the answer he gave, was that he also falsely represented to the insurance agent at the time the application was taken that he had not been *87 involved in any accident during the preceding 5 years. Had he revealed the fact of the prior accident, it would have been necessary for him to reveal the time and place thereof, as well as the fact that the claim had been paid by State Farm.
Whether or not the mere fact of the prior accident, of itself, if known to the insuror, would have caused Allstate to refuse insurance, it is nevertheless true that Black was aware that the information relating thereto might well have led to the disclosure that the insurance on his wife's automobile had been "cancelled or refused" because of such accident and the surrounding circumstances. Hence, we believe and hold that Black willfully concealed the fact of the prior accident, in order to prevent Allstate from ascertaining that the insurance on his wife's automobile had been cancelled or refused.
Even if it be assumed that Black did not have actual knowledge that State Farm had sent his wife a notice of cancellation or refusal to renew her insurance, we find as a fact that the representation he made was nevertheless fraudulent. There was no reason for Black to honestly believe that his wife had not received a notice of cancellation. The law of Missouri is well settled that fraud may be implied from a materially false representation recklessly made by one who knows that he is without knowledge as to its truth or falsity. See Wilson v. Murch, Mo.App., 354 S.W.2d 332, 338-339; Salmon v. Brookshire, Mo. App., 301 S.W.2d 48; Smithpeter v. Mid-State Motor Co., Mo.App., 74 S.W.2d 47.
In other words, if Black, when he made his representation "as though (it was) of his own knowledge, knew that he had no knowledge of the matter represented to be true, then the law constructively supplies the scienter or evil intent, if, as a matter of fact, the representations made were not the truth." Jos. Greespon's Son Pipe Corporation v. Hyman-Michaels Co., Mo.App., 133 S.W. 2d 426, 428. And in Western Cattle Brokerage Co. v. Gates, 190 Mo. 391, 89 S.W. 382, 386, the Supreme Court of Missouri held, "One who makes representations which he does not know to be true, and conscious of the fact that he has no knowledge on the subject, to another whom he knows has no knowledge as to the truth or falsity of the representation, is as much guilty of fraud as if he had actual knowledge of the falsity of the statement".
The materially false representation in the application, which was relied upon by Allstate in issuing the policy, having found to be fraudulent, voided the policy at the instance of Allstate upon discovery of the truth.
Allstate's cancellation notice was sent to Black on July 15, 1963, more than 3 months after the accident, and less than 4 months from the date of the policy. So far as appears from the record, the first actual knowledge concerning the State Farm "cancellation" notice was received by Allstate about July 1, 1963. Although Allstate, through the Underwriters Service Association or otherwise, may have been informed of the "cancellation" of the Jones' policy in 1961, such knowledge is immaterial, since the only name then given was Jones, not Black, and Allstate could not have known that some 15 months later, Black would apply for coverage. There is no evidence that Allstate knew, prior to July, 1963, that Mrs. Black, the wife of Allstate's assured, is the same person as Nell Ruth Jones, the insured in the State Farm policy, or that it issued its policy with such knowledge. We hold that Allstate acted within a reasonable time after actual knowledge. Cf. Travelers Indemnity Co. v. Harris, D.C.Mo., 216 F.Supp. 420.
The foregoing findings compel a finding for garnishee and make unnecessary that we rule garnishee's further contention that the policy should also be held void ab initio because of the falsity of Declaration 10 of the policy. Declaration 10, contained on the Supplement Page of the policy reads as follows:
"During the past two years, with respect to the named insured or any member of his household, (1) no insurer has cancelled or refused or given *88 notice that it intends to cancel or refuse any similar insurance, nor (2) has any license or permit to drive an automobile been suspended, revoked or refused."
The policy recites that the insuring agreement by Allstate is made "in reliance of the Declarations on the Supplement Page." Included in the "Conditions of the Policy" is the following, relating to the "Effect of Policy Acceptance":
"By acceptance of this policy, the named insured agrees that the Declarations on the Supplement Page are his agreements and representations, and that this policy embodies all agreements, relating to this insurance, existing between himself and Allstate or any of its agents."
We note that in garnishee's letter of July 15, 1963, voiding the policy ab initio, the ground relied on was obviously the falsity of Declaration 10 which is, essentially, the same representation contained in the application, but more limited in scope.
It is garnishee's position that since the policy was conditioned upon the truth of the Declarations therein, the falsity of Declaration 10 necessarily rendered the policy void ab initio. Although this specific issue was not expressly made by the pleadings, there is a complete absence of surprise, and plaintiff could not conceivably be prejudiced in fact by treating the so-called return of garnishee as amended to include this issue.
The distinction between a materially false representation in an application for insurance not made a part of the policy and a similar misrepresentation contained in the policy itself is that the former must be fraudulent, whereas the latter need not be. "When the policy of insurance is conditioned on the truth of the declarations contained therein which are material, then the false representation will avoid the policy though innocently made." Coonce v. National Indemnity Company, D.C.Mo., 213 F.Supp. 483, 486, affirmed sub nom. Cass Bank & Trust Company v. National Indemnity Company, 8 Cir., 326 F.2d 308. This is so because the representation is contractual in nature, and the insurer is entitled to rely on the contract. Ettman v. Federal Life Insurance, 8 Cir., 137 F. 2d 121; and Dixon v. Businessmen's Assurance Company, 365 Mo. 580, 285 S.W. 2d 619, 625. By accepting the policy, Black agreed to its terms and to the truth of the declarations. Teich v. Globe Indemnity Co., Mo.App., 25 S.W.2d 554, 558.
Plaintiff suggests that the "Pledge Against Cancellation" contained in the policy precludes Allstate from avoiding the policy on the ground of false representation. In this Pledge, Allstate agreed that effective 60 days after the inception of the liability coverage, during the 5-year period following the effective date, it would continue such coverage in force subject to certain conditions, including the following:
"B. This agreement (that is, the Pledge) shall be void and of no effect: * * * (3) if the named insured's representations, as contained in Policy Declaration 10, are not true."
Of course, Black's "representations as contained in Declaration 10" of the policy are not true, so that, by its express language, the Pledge is void and of no effect. In any event, in view of our finding that by reason of Black's fraudulent representations the policy was void ab initio, there never was an effective contract, with the result that neither the Pledge nor any of the other policy provisions are binding on garnishee.
Section 379.195, R.S.Mo., provides, in part, that whenever a loss occurs on account of a casualty covered by a contract of liability insurance, "the liability of the insurance company, if liability there be, shall become absolute". The injured party, in effect, stands in the shoes of the insured as of the date of the accident, the key words in this respect being "if liability there be". In view of our finding that the policy is void ab initio as to Black, there is no *89 liability thereunder to anyone, including plaintiff. "[Her] rights are no greater and no less than the insured's would have been in an action between the insured and the insuror, if the insured had paid the judgment to the injured party." Meyers v. Smith, Mo., 375 S.W.2d 9, 15.
The foregoing memorandum constitutes our findings of fact and conclusions of law.
The Clerk is directed to enter judgment in favor of garnishee and against plaintiff.