**PREFERRED RISK MUTUAL INSURANCE CO., a corporation,**
**Plaintiff,**

v.

**Simon Andrew MAIN et al., Defendants.**
**Civ. A. No. 14841-3.**

United States District Court
W. D. Missouri, W. D.
April 5, 1968.

Kuraner, Freeman, Kuraner, Oberlander & Lamkin, Kansas City, Mo., for plaintiff.

J. H. Greene, Jr., Raytown, Mo., for defendants Main and Mabry.

Al Mendelson and George Faso, Kansas City, Mo., for defendant Yelick.

Stanford Zeldin, Kansas City, Mo., for defendant, Kolie.

## MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECLARATORY JUDGMENT

BECKER, Chief Judge.

### Nature of Action

This is an action for declaratory judgment that the plaintiff insurer, Preferred Risk Mutual Insurance Company ("insurer" hereafter), is not liable or obligated to defend under an automobile liability insurance policy No. 352667 issued by it to defendant Simon Andrew Main (husband of defendant Jewell Marie Main and stepfather of defendant Phillip D. Mabry) on a 1960 Pontiac automobile, effective by its terms for 6 months from July 3, 1963, and renewed January 3, 1964.

The insurer in support of its claim for relief stated that the defendant Simon Andrew Main (hereinafter called Simon Main) on or about July 3, 1963, falsely represented in a written application for insurance on the 1960 Pontiac (1) that no insurer had cancelled any automobile insurance or refused any automobile insurance to him or anyone in his household within three years, and (2) that he was the sole owner of the 1960 Pontiac. The insurer claimed that in reliance on these false representations the policy in question was issued (First Amended Complaint Pars. 3, 4, 8 and 10).

Further, in support of its claim for relief the insurer stated that on or about January 3, 1964, in reliance on the alleged prior false representations, and in reliance on the further representation that the automobile license or permit to drive

of Simon Main or anyone in his household had not been revoked, the insurer renewed the policy of insurance for a further period of six months ending July 3, 1964 (First Amended Complaint Pars. 5, 8 and 10). (There was no evidence to support this alleged further false representation. Consequently plaintiff insurer has abandoned the contention based thereon.)

Plaintiff insurer further alleged that the alleged false representations were material to the risks insured against and were relied on by it in issuing the policy in question. The defendants denied that false representations were made to the plaintiff insurer and that the policy in question was issued in reliance upon any false representations.

The defendants other than Simon Main are Jewell Marie Main (his wife, and hereinafter called Marie Main), Phillip Mabry (son of Marie Main and stepson of Simon Main), Ronald D. Yelick and Robert G. Kolie. Marie Main was joined upon the mistaken assumption that she was a named insured in the policy in question.

Phillip Mabry, Ronald D. Yelick and Robert G. Kolie are joined as defendants because they are parties to actions for damages filed in the state court arising out of a collision on February 2, 1964, between the 1960 insured Pontiac and a retaining wall, while Mabry was driving the Pontiac and Kolie and Yelick were passengers therein.

### Jurisdiction

Jurisdiction to hear and determine this controversy exists under Section 2201 of Title 28, U.S.C., because of the presence of diversity of citizenship and of the jurisdictional amount. Under the special circumstances of this case, including the length of time this case has been pending undetermined, discretion to entertain the action has been exercised in favor of assuming jurisdiction. No general ruling on this subject is made in this case.

### Relevant Prior Insurance History

The plaintiff insurer is an Iowa corporation engaged in writing automobile liability insurance in Missouri and elsewhere for persons who do not use alcoholic beverages. One of the methods its agents use in selecting prospects to be solicited for insurance is to record the license plates on automobiles of those attending church services. From these numbers the automobile owners are identified and placed on the list of prospects. It was by this means that in 1962 Robert D. Bjerken, then the agent of plaintiff, obtained the name of defendant Simon Main as a prospect. Having so obtained the name of Simon Main, on February 4, 1963, agent Bjerken, on behalf of the plaintiff insurer, solicited and obtained from Simon Main an application for a policy of automobile liability insurance (including public liability) on a 1961 Chevrolet owned by Simon Main. At that time and at the time of filing this suit, Phillip Mabry was a single, unmarried minor at least 19 years of age.

In applying to the plaintiff insurer, on February 4, 1963, for insurance on the 1961 Chevrolet (then insured by Farmers Insurance Group ("FIG" hereafter) Simon Main signed a written application (P.Ex. 4a) prepared by agent Bjerken, listing a 19 year old male (Phillip Mabry) as a member of his household, age 10 or over. Marie Main, the insured's wife, was not listed, apparently because she then had no license to drive, a fact which would not change her status as a member of the household. Agent Bjerken, however, apparently thought "members in household" meant licensed drivers in household. Simon Main then advised Bjerken that his son 19, had an accident a year ago, Bjerken noted on the back of the application that the son had an accident a year ago, and that the son "will not be covered under this policy because he's in service for 4 years. RDB."

On the application on February 4, 1963, Simon Main subscribed to the

printed "Representations", one of which is as follows:

"1. No insurer has either cancelled any automobile insurance or refused any automobile insurance to me or anyone in my household within three years, except as specified hereon."

No exceptions to this representation were specified. Indeed there is no clearly indicated space on the form for such information on the form. No restrictive endorsement was placed on the policy issued in February, 1963, by plaintiff insurer to exclude Phillip Mabry from coverage. On the back side of the application in a square entitled "—25%—Merit Reduction Certificate" the insured Simon Main subscribed to a printed statement that insured and all members of insured's household who would drive the 1961 Chevrolet had been licensed and had not had an accident (as defined) in the past five years.

■ Plaintiff insurer asserts that on February 4, 1963, the defendant Simon Main did not tell agent Bjerken of the restrictive endorsement (hereinafter described) on a FIG policy effective December 16, 1962, while Bjerken was preparing the application; and further asserts that Simon Main did not tell Bjerken of the notice of reclassification of the FIG insurance resulting in a request to pay a raised rate as a condition of renewal. On the other hand the defendant Simon Main testified that not only was the fact of the restrictive endorsement disclosed to Bjerken but that he showed Bjerken the FIG policy with the restrictive endorsement thereon. Further Main testified that he advised Bjerken that Phillip Mabry then in the service would drive when at home on a furlough; that this was the only reason Simon Main would buy the policy. On the issue created by the opposing versions the plaintiff insurer has failed to meet the burden of proof. Bjerken was eager to sell the insurance. He had sought out Main for that purpose. As his notes on the back of the application show, he was advised at length about Phillip Mabry. The plaintiff insurer has not proved that

there was any false representation or concealment regarding Mabry's accident, military status or that he would drive when home on furlough; nor has plaintiff proved that there was any false representation concerning cancellation or refusal of insurance to him or any member of his household, as explained hereinafter.

The 1961 Chevrolet was insured by FIG as a new car (at a Class 8 rate) from December 12, 1960, until August 20, 1962. FIG had semiannually renewed its policy No. 02–26117271 (issued originally on a 1956 Ford replaced by the Chevrolet in 1960) covering the named insured without any restriction in the coverage of the policy in respect to any person using the Chevrolet with the consent of the insured. This policy was finally renewed for a period from August 20, 1962, to February 20, 1963. This FIG policy was not thereafter renewed, and "lapsed" for nonpayment of premium on February 20, 1963. The insured's failure to pay the premium was intentional and occurred because of the issuance of a policy on the Chevrolet by the plaintiff insurer on February 4, 1963.

On February 20, 1962, Simon Main secured issuance by FIG to him as the insured a second automobile liability policy (No. 02–29040319) on a 1955 Plymouth owned by him. There were no restrictions in the coverage of this policy in respect to any person using the Plymouth with the consent of the insured.

On October 15, 1962, while the FIG policy on the 1961 Chevrolet was in force by renewal and unexpired, the defendant Phillip Mabry, while driving the Chevrolet, was involved in a collision resulting in damages to a third party. As a result of this casualty, on October 15, 1962, an agent of FIG suggested that cancellation be reviewed because Phillip Mabry "has had two moving accidents since February." On review of the information on October 20, 1962, the underwriting department of FIG gave instructions to its agent to change the rate on policy No. 02–29040319 on the 1955 Plym-

outh to a higher rate class (2R for an individual single and under 25 years of age driving more than 25% of the time. P.Ex. 2, page 4). As a result, an invoice was mailed to the insured Simon Main advising him that there was an additional "upcharge" of $67.70 on the Plymouth policy and that the policy would be cancelled on November 15, 1962, unless the "upcharge" was paid. The "upcharge" was the higher rate resulting from the change of classification to "2R".

The requirement made by FIG was the agreement to a higher rate if Phillip Mabry was to be covered. This requirement was not refusal to cover Phillip Mabry. The issue was price of the coverage, not willingness of FIG to continue the coverage. At the time, the transaction was of little importance to the insured Simon Main because his stepson had earlier entered military service for an expected four year period.

On November 13, 1962, before the date fixed by FIG for payment of the "upcharge" or cancellation of the policy on the 1955 Plymouth, Mrs. Main, on behalf of her husband, advised FIG by letter that the 1955 Plymouth had been sold and requested cancellation of the insurance thereon. This was about the time that Phillip Mabry went into military service for a period of four years. On November 13, 1962, pursuant to this request by Mrs. Main for cancellation, policy No. 02–29040319 on the Plymouth was cancelled at the request of the insured. (P.Ex. 2, page 3. Deposition of Omer Reed, pp. 13 and 23.)

Further private investigation by an agent of FIG disclosed on December 3, 1962, alleged information that Phillip Mabry "is a fast, reckless type driver— he is now gone in service." (P.Ex. 1, page 7.) Because of this additional alleged information of Mabry's reputation as a driver, the underwriting department of FIG requested an agreed form E–180 "restriction endorsement— (person)" on its policy 02–26117271 on the 1961 Chevrolet, providing for re-restriction of Phillip Mabry as follows:

"In consideration of a 30 day waiver on the part of the Exchange of its right to cancel this policy for any reason (except failure of the insured to pay the required premium) it is agreed that such coverage as is afforded by this policy shall not at any time on and after the effective date hereof apply to any loss arising out of the operation of any automobile by the person named above." (P.Ex. 1, page 5).

Because his son was then in military service obligated to serve for four years, the insured agreed to this endorsement and signed his acceptance thereof effective December 16, 1962. The plaintiff insurer erroneously characterizes this transaction as a "cancellation" by restrictive endorsement, though it is clear FIG did not record it or consider it a cancellation (Reed Dep. p. 30). It is not proved that cancellation might have ensued if the insured had not agreed to the restrictive endorsement (Reed Dep. p. 31). Nor is it proved that this was a refusal of insurance to Phillip Mabry. There is no proof that cancellation of the policy by FIG would have ensued if Simon Main had refused to agree to the restrictive endorsement. Reed's equivocal and conclusory opinions concerning the effect of the restriction agreement and speculations concerning probable actions of FIG if Simon Main had refused to agree to the endorsement are not sufficient to meet plaintiff's burden of proof. (Reed Dep. pp. 23, 24, 26, 27, 28, 30, 31, and 32.)

### The Issuance of the Policy in Question

While in military service (Air Force) Phillip Marby served at duty stations in other states until he was transferred to Whiteman Air Force Base in Central Missouri. When Phillip Mabry visited his stepfather and mother on furlough from this base he desired to drive an automobile. During the tour of duty at this base he visited the Mains' home at weekly and biweekly intervals. When Mabry visited at home from the base, he would occasionally drive the 1961 Chevrolet. He paid no board or room to Mr.

or Mrs. Main for these visits. Two times Mr. and Mrs. Main drove to Whiteman Air Force Base in the 1961 Chevrolet to visit Phillip Mabry. On neither occasion was the Chevrolet left with Mabry at the base.

In July, 1963, while Phillip Mabry was assigned to duty at Whiteman Air Force Base, defendant Simon Main, with approval and assistance of Marie Main and Phillip Mabry purchased the used 1960 Pontiac on which the insurance in question was later issued. On July 3, 1963, the three went to a used car dealership, Wilson Motors of Kansas City, to negotiate for the purchase of a used automobile. Simon Main selected a 1960 Pontiac offered for the purchase price of $1495.00. Phillip Mabry, for whose primary use the Pontiac was purchased, approved the selection. The Pontiac was purchased the same day, July 3, 1963. Simon Main paid $300.00 down on the purchase price. Arrangements were made at Wilson Motors to finance the remainder of the purchase price through the Jackson County State Bank on an installment obligation of Simon Main. Title to the Pontiac was issued to Simon Main as purchaser. Simon Main paid the installments on the purchase price, but Phillip Mabry paid for some oil and gasoline when he used the Pontiac. Simon Main became the legal and equitable owner of the Pontiac.

█ On July 3, 1963, at Wilson Motors immediately after the purchase of the Pontiac, Simon Main gave Mrs. Main a card from his billfold listing the telephone number of the sales agency of the plaintiff insurer. With the approval of Simon Main, Mrs. Main called the number by telephone for the purpose of securing insurance on the Pontiac. Mrs. Main was connected with the insurer's sales agent James F. Roe who advised her that agent Bjerken was no longer with the insurer. Agent Roe then took the application for insurance on the Pontiac over the telephone from Mrs. Main after getting the plaintiff insurer's file on the 1961 Chevrolet and returning the call. The application for insur-

ance taken by telephone was never signed by Simon Main as owner and insured (P.Ex. 5, page 1; also marked P.Ex. 7). Nevertheless Mrs. Main was authorized to act as agent for Simon Main in applying for the insurance, and Simon Main is responsible for her acts and omissions in doing so.

Agent Roe was not reluctant to write the insurance by telephone without signature on the application. He issued a binder by telephone, noted that he didn't inspect the insured car, and listed other members in the household over 10 years of age as only a female 33 years of age P.Ex. 5, page 1; also marked P.Ex. 7). Agent Roe immediately claimed the credit for the new account and the old account on the 1961 Chevrolet previously written by agent Bjerken, because he had sold a second automobile policy to Simon Main. (P.Ex. 4c.) This was possible because Bjerken had left the employ of the plaintiff insurer. Agent Roe is and was an enthusiastic salesman. He testified at the time of trial that he subsequently left the service of the insurer in 1964 "to make more money" and now sells the "world's greatest vacuum cleaner."

On July 3, 1963, agent Roe accepted the application from Mrs. Main for automobile insurance on the Pontiac, as "second car insurance" by telephone and without signature; and thereupon authorized coverage thereon as permitted by the plaintiff insurer.

In receiving the application by telephone and in approving the insurance on the Pontiac, agent Roe had before him the earlier application on the 1961 Chevrolet (P. Ex. 4).

Mrs. Main told agent Roe that there were two "cars in household" which was noted on the application (P.Ex. 5) and that there had been an "accident or traffic violation by any driver in last 3 years" which was noted on the application (P. Ex. 5). In this regard the insurer had notice that Phillip Mabry was considered a "driver" of the Pontiac. Then agent Roe assured Mrs. Main the Pontiac was covered by insurance.

Mrs. Main asked for and secured permission of agent Roe for Phillip Mabry to drive the Pontiac to the Main home but she was advised to call agent Roe later before Mabry drove again. Phillip Mabry drove the car home and parked it on the driveway of the Main home. It remained there for several days until a license plate was purchased and until Mrs. Main telephoned agent Roe as instructed. Mrs. Main then called agent Roe to be sure the automobile was insured. At this time Roe asked Mrs. Main if Phillip drank, Mrs. Main answered that to her knowledge he did not. Mrs. Main then told Roe she would keep possession of the Pontiac and that Phillip would be driving only with permission of the owner. Roe asked for and was given Phillip's driver's license number and was invited to talk to Phillip. Mrs. Main in an interview with agent Roe in her home, told agent Roe of a 1962 accident involving Phillip and of the prior restrictive endorsement. Agent Roe assured Mrs. Main that Phillip could drive when at home on leave. Mrs. Main told Roe that Simon Main was the owner of the Pontiac, which was correct.

Mrs. Main's driver's license had expired some time ago. Thereafter she secured a learner's permit but was not authorized to drive when the Pontiac was purchased. The primary purpose of Simon Main in buying the Pontiac was to have a car when Phillip was on leave, and secondarily for Mrs. Main to use in driver's training to secure a new driver's license.

In order to influence the insurer in issuing the policy in question on the Pontiac, agent Roe, in red ink, underlined and added two exclamation points to the information on the earlier application on the 1961 Chevrolet so it read as follows when so emphasized (P.Ex. 4, back side of page 1):

*"Have son 19—He had accident year ago. He will not be covered under this policy because he's in service for 4 years. R.D.B.!!"*

All this factual information was correct when the application in question was made February 4, 1963. The opinion or prophecy that "he will not be covered under this policy" was an erroneous conclusion of agent Bjerken apparently on the theory that "covered" related to coverage of one other than an occasional driver.

*The Alleged False Representations*

Plaintiff insurer has abandoned all of its original claims of false representations except those alleged to be in the following question and answer of Mrs. Main which plaintiff alleges to be false:

"1. Has any insurer either cancelled or refused any automobile insurance to you or anyone in your household within 3 years? No." (P.Ex. 5, page 1.)

The plaintiff insurer claims in part that in answering this question negatively the insured defendant Simon Main made the following false representations: The insured falsely represented that no insurer had "cancelled any automobile insurance to" the insured or "to" Phillip Mabry (who is asserted to be a member of insured's household on February 4, 1963, and July 3, 1963) although the insured well knew (a) that FIG had cancelled automobile insurance to Phillip Mabry by securing a "cancellation by restrictive endorsement" effective December 16, 1962, on policy No. 02–26117271 on the 1961 Chevrolet; and (b) that FIG had cancelled automobile insurance to Phillip Mabry by notice of November 2, 1962, to Simon Main that unless the higher rate 2R ("up-charge") was paid policy No. 02–29040319 on the 1955 Plymouth would be cancelled on November 15, 1962.

■ Assuming that on July 3, 1963, Phillip Mabry (who was then in military service on active duty) was a "member of the household" of the insured Simon Main, no false representation in respect to the alleged cancellation is contained in the answer to question No. 1 of the application quoted above.

■ The restrictive endorsement effective December 16, 1962, was agreed to by FIG and Simon Main. An agreed restriction of coverage of an individual is

not a cancellation by an insurer. The agent who was eager to sell the insurance was advised of the restriction and did not see fit to so record it on the application form. The insured has never considered the agreed restriction to be a cancellation. Nor did the insurer FIG consider the restriction to be a cancellation. The restriction was not recorded as a cancellation in the files of the FIG (P.Ex. 1).

Further, the claim that FIG cancelled policy No. 02–29040319 by notifying Simon Main on November 2, 1962 that policy No. 02–29040319 would be cancelled if the higher rate 2R was not paid was not a cancellation of insurance "to" Simon Main or to Phillip Mabry. The undisputed fact, dispositive of this claim of the plaintiff, is that the insurance policy continued in force until November 13 when it was cancelled at the request of the insured because the insured automobile had been sold. The records of FIG of the cancellation including the handwritten letter requesting the cancellation are unequivocal. (P.Ex. 2, pages 3, 4 and 5.) Therefore, the answer to the question was not a false representation in respect to cancellation, whether the question and answer are construed technically or practically, subjectively or objectively. Cf. National Aviation Underwriters, Inc. v. Fischer (C.A. 8) 386 F.2d 582.

The restrictive endorsement was the result of an agreement between the insured Simon Main and the insurer FIG. It was not a cancellation of automobile insurance of anyone. The plaintiff insurer has failed to prove that cancellation of the policy coverage, in whole or in part, would have ensued if Simon Main had refused to accept the proposed restrictive endorsement. The insured had no obligation to report the restrictive endorsement to the plaintiff in answer to the above quoted question drafted by the plaintiff insurer. The insurer could have easily required an answer to a direct question concerning any past restrictions of omnibus coverage by a simple question in the application seeking information concerning past restrictions of coverage. The insurer did not ask such a question and should not complain that somehow an ordinary layman should have nevertheless inferred that information about restrictive endorsements was required. This ruling is consistent with the rule that ambiguous documents prepared by the insurer which may limit liability are construed by Missouri courts "most strongly against the insurer." Giokaris v. Kincaid (Mo.Sup.) 331 S.W.2d 633, l. c. 639, 86 A.L.R.2d 925.

Assuming again that on July 3, 1963, Phillip Mabry was a member of the household of the insured Simon Main, the question remains whether either the restrictive endorsement of December, 1962, on policy No. 02–26117271 or the notice of November 2, 1962, by FIG that it would cancel policy No. 02–29040319 on November 15, 1962 unless the higher rate 2R ("upcharge") was paid, constitutes a "refusal" of insurance to Phillip Mabry or to Simon Main.

The insurer claims that insurance was refused the insured by the notice of November 2, 1962, that policy No. 02–29040319 would be cancelled unless the higher rate 2R was paid. On the contrary, it is found that no insurance was thereby refused to the insured or anyone else. The question raised thereby was whether the insured was willing to pay the higher 2R rate in order to secure a renewal of the insurance. The alternative possible cancellation by the insurer was the method by which the higher rate was to be secured. In substance, the notice sent by the insurer FIG to Simon Main on November 2, 1962 was not refusing insurance but was soliciting renewal of the insurance at a higher rate.

There is a further reason that there are no false representations in respect to the restrictive endorsement. It appears from the evidence that agent Bjerken not only was told by Mrs. Main of the endorsement, but was also shown the policy with the endorsement thereon. Bjerken did not construe the endorse-

ment to be a cancellation or refusal of insurance in preparing the application for the insured's signature. (P.Ex. 4(a).)

The foregoing findings make it unnecessary to determine whether Phillip Mabry was a member of the household of the insured on July 3, 1963, as the term was used in the application. (P.Ex. 5a.) Missouri law governs this question. It is noted that the last applicable definition of "household" in Missouri jurisprudence is contained in Giokaris v. Kincaid (Mo.Sup.) 331 S.W.2d 630, 86 A.L.R.2d 925. Whether Phillip Mabry, a 19 year old member of the Air Force on active duty, was a member of the household of his stepfather is one which may well be resolved against the insurer on general considerations and in the context of this case. The insurer's own agent apparently did not regard the wife living in the home a member of the household because she does not drive regularly or have an ordinary driver's license. Under these circumstances it is unreasonable for the insured to conclude that a 19 year old son in military service for four years is not a member of his household? Perhaps some day this specific question will be answered by the Missouri courts. There is no need to anticipate this answer. Cases cited by the plaintiff insurer on the legal domicil of persons in military service are not in point.

### Authorities Relied on by Insurer

The insurer relies on state and federal cases which are inapplicable to the facts found in this case. The cases relied on regarding the issue of false representation and found inapplicable are Taylor v. Black (E.D.Mo.) 258 F.Supp. 82; Smith v. American Automobile Ins. Co. 188 Mo.App. 297, 175 S.W. 113; Miller Adm'x. v. Plains Insurance Co. (Mo. App.) 409 S.W.2d 770.

The foregoing cases, decided under Missouri law and relied on by plaintiff, have been fully considered and distinguished on the facts. For example, Taylor v. Black (E.D.Mo.) 258 F.Supp.

82, was a case in which the wife of the insured had been sent a formal election to cancel a policy in which she was the insured, because the insured had been convicted of driving while intoxicated. Subsequently, with knowledge of the falsity of the representation, the insured represented to another insurer that no member of his household had "ever been sent notice of cancellation or given notice of intention to cancel * * * any insurance * * *." The Taylor case is not in point. Nor are any other cases cited by the plaintiff insurer in point on the facts as found in this case.

While the importance of the finding in this case is not great, it is further found that the insured did not knowingly or recklessly misrepresent any fact. Cf. Taylor v. Black (E.D.Mo.) 258 F.Supp. 82, l. c. 87.

### Materiality of Representations

The representations made in answer to question No. 1 quoted above were material to the risk as a matter of fact and law. Taylor v. Black, supra, and authorities therein cited.

### Reliance on the Representations

Ordinarily it would appear in a case of this kind that the insurer would have relied on the answer to question No. 1 and other available information relating thereto in issuing the policy. In this case, however, the contrary is found. Defendants' witness, Donald G. Witt, manager of the plaintiff's underwriting department at the time the policy in question was issued, made it clear that no alleged misrepresentation of fact was relied on in issuing the policy, or in failing to restrict coverage to persons other than Phillip Mabry. Witt stated unequivocally that the policy was issued without a restrictive endorsement in reliance on an alleged statement of the insured that Mabry would not drive because he was in the service. This alleged statement was not a representation of existing or past fact but was a statement concerning future events which alone cannot be the basis of fraud under the

Missouri rule. Yerington v. Riss (Mo. Sup.) 374 S.W.2d 52, l. c. 58.

Further in July, 1963, agent Roe was told that Mabry would drive on furlough; that this was the primary reason for the purchase of the policy of insurance by the insured. Agent Bjerken, not the insured, was the optimistic source of the opinion in February, 1963 that Mabry would not drive because he was "in the service for 4 years." (P.Ex. 4a reverse side)

Underwriter Witt's testimony on the questions of reliance is as follows:

Q. (By Mr. Greene.) Taking into consideration the fact that the application for the Chevrolet dated February 4, 1963, which was prior to the application for the principal car involved in this lawsuit, taking that into consideration, that the original application showed other members of the household, age 19; also it shows any accident or traffic violation by any driver in the last five years, yes. Now, why wouldn't that put you on notice to make further inquiry as to whether or not Philip Mabry was operating an automobile?

A. We relied on Mr. Main's statement that Mr. Mabry would not drive because he was in the service.

Q. But you didn't place a restrictive endorsement on that, did you?

A. No, sir.

Q. And when you had a hazardous driver, as you lead the Court to believe here, why was not a restrictive endorsement placed on the policy prohibiting coverage if Philip Mabry had been operating the car?

A. Because we were told he would not operate the car.

Q. This policy would cover somebody that only operated the car occasionally, would it not?

A. Yes.

Q. Very occasionally?

A. Yes.

Q. And, of course, by this boy being in the service for four years, you only expected that he would operate it very occasionally, didn't you?

A. Wouldn't know. We relied upon the statement that he would not drive at all.

Q. But you had these forms for restrictive endorsements, didn't you?

A. Yes.

Q. And all it would have taken would have been someone's name placed in it and would have solved the situation, wouldn't it, so far as Philip Mabry is concerned?

A. According to our knowledge, we felt the situation was solved by the statement on the back of the application.

Q. But you made no further inquiry from the Farmers' as to just what their file showed, did you?

A. No.

Q. In other words, your company was negligent in not making diligent inquiry, isn't that correct?

A. No.

*Question of Attorneys' Fees and Expenses*

Having concluded that the insured Simon Main and Phillip Mabry (as driver with consent of the insured) were covered by the liability insurance policy No. 352667 at the time of the casualty out of which the state court actions by defendants Yelick and Kolie arose, there remains the further questions of obligation of the plaintiff insurer to pay for attorneys' fees and expenses of Simon Main and Phillip Mabry (a) in defending the state court suits for damages and (b) in defending this action. The principles governing these questions are found in state and federal jurisprudence.

An obligation of the plaintiff insurer to reimburse the covered defendants

Simon Main and Phillip Mabry for expenses and damages resulting from their investigation, negotiations for settlement and defense of the state court suits exists under applicable state (and federal law) where the facts show a refusal by the insurer to perform the obligations of the insurance contract.

Under Missouri jurisprudence, it is clear that a refusal to defend a party actually within the policy coverage, even though made under an honest mistake, is unjustified and amounts to a breach of contract. See Annot., 49 A.L.R.2d 694, l. c. 713, for a collection of Missouri cases on this point; also see, 31 Mo.L.R. 162 (1966). Under the Missouri rule, the insurer may be liable for the maximum policy coverage and the insured may recover attorneys' fees and expenses which the insured expended or incurred by reason of the insurer's failure to assume the defense of the state court action. Landie v. Century Indemnity Co. (Mo.App.1965) 390 S.W.2d 558. Therefore, the plaintiff insurer is obligated to pay expenses and attorneys' fees expended or incurred by Simon Main and Phillip Mabry and each of them, in the investigation, negotiations for settlement and defense of the state court actions against them, only in the event that it can be said that plaintiff refused to defend the state court actions.

In a federal diversity action for a declaratory judgment by an insurer erroneously denying coverage, the insured (Simon Main and Phillip Mabry in this case) may be able to recover expenses and attorneys' fees incurred in defense of the declaratory judgment action under one or more of the following: (1) applicable state common law for breach of contract, 7A Appleman Insurance Law and Practice § 4691, pp. 512–513;[1] (2) applicable state statute, Phoenix Indemnity Co. v. Anderson's Groves, Inc. (C.A. 5, 1949) 176 F.2d 246; and (3) a federal court's inherent equitable power under Sections 2201 and 2202, Title 28, U.S.C., Security Insurance Co. v. White (C.A. 10, 1956) 236 F.2d 215. Under Missouri jurisprudence, attorneys' fees may be recoverable by a successful party in a suit brought under the Missouri Declaratory Judgments Act. Bernheimer v. First National Bank of Kansas City (Mo.Sup.1950) 225 S.W.2d 745.

Under the statutory powers granted by Sections 2201 and 2202, Title 28, U.S.C., a federal court, in an action such as this, should exercise a judicial discretion to determine whether an obligation to pay expenses and attorneys' fees of the insured defendants should be

---

1. The pertinent paragraph reads as follows:

"Where an insurer failed to defend until after an adverse decision in a declaratory judgment action instituted by it, such insurer was held not liable to pay the attorneys' fees and expenses incurred by the insured in the declaratory judgment action, in the absence of fraud, bad faith, or stubborn litigiousness on the part of the insurer. [Note citing Maryland Casualty Co. v. Sammons, 11 S.E.2d 89, 63 Ga.App. 323, cert. den. 306 U.S. 633, 59 S.Ct. 463, 83 L.Ed. 1035; Standard Surety & Casualty Co. v. Perrin (La.App.) 19 So.2d 783.] But, despite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above. Other courts have refused to impose such a burden upon the insured."
See also, 8 Blashfield, Cyclopedia of Automobile Law and Practice § 352.68, pp. 712–713.

declared. In this case, the insurer has attempted unsuccessfully to avoid liability but has not attempted to escape its obligation to defend the suits brought by defendants Yelick and Kolie in the state court. The insurer agreed pendente lite to defend these suits under a reservation of rights. The suit at bar was commenced by plaintiff's filing its complaint on February 19, 1964. The case of Kolie v. Mabry was not filed in the Circuit Court of Jackson County, Missouri, until March 2, 1966, and the case of Yelick v. Mabry was filed in the same court on March 15, 1967. In both instances, the evidence shows that plaintiff, on April 4, 1966, with regard to the Kolie case, and on May 10, 1967, with regard to the Yelick case, sent letters agreeing to defend the suit on condition that such defense should not be construed as a waiver of plaintiff's rights in the premises,

> "and in particular shall not be construed as a waiver of any of the grounds for avoiding this policy asserted in the case pending in the United States District Court above referred to, nor a waiver of the rights of the company to avoid liability to pay any judgment which might be recovered in the above action, all of the rights of the company asserted in the pending case in the United States District Court being expressly and specifically reserved."

The letters were made a part of the record herein at the pretrial conference of April 27, 1964, at which the insured's counsel agreed to the defense under a reservation of rights. Plaintiff, further, alleged the bringing of the two suits in the state court in its "supplemental complaint" filed on May 31, 1967, and the defense thereof under reservation of rights agreements. Plaintiff insurer, under the conditions thus stated, undertook the defense of the aforementioned suits and continued in that defense in good faith. Therefore, no allowance should be made for attorneys' fees and expenses in defense of the state court action.

Under the circumstances of this case, the defendants Simon Main, Marie Main, and Phillip Mabry have incurred expenses and attorneys' fees in defending this action. Insurers may bring federal declaratory judgment actions to determine non-coverage under an insurance contract. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. If the action is unsuccessful, however, and causes the insured to incur expenses which would not otherwise have been incurred, under equitable principles the federal court may declare the insurer obligated to pay the expenses of the insured which would not otherwise be incurred in successfully defending the action. Security Insurance Co. v. White, supra; Gwin v. Liberty Mutual Ins. Co. (S.D.Ala.) 241 F.Supp. 591; 7A Appleman Insurance Law and Practice § 4691, pp. 512–513 and note 68. Under applicable equitable and legal considerations, it is hereby concluded that there were unresolved issues of fact and law which justified the bringing of this action, in good faith, to determine plaintiff's obligations. So no award for attorneys' fees will be allowed under the circumstances of this case.

These principles of law affecting attorneys' fees and expenses are not based on the Missouri statute imposing penalties for vexatious refusal to pay. Cases holding that under that statute attorneys' fees are not allowable are inapposite. Cf. Maryland Casualty Co. v. Dalton Coal and Material Co. (C.A. 8) 184 F.2d 181. But in view of the serious legal and factual questions in this case and of plaintiff's assumption of the defense of the state actions under the nonwaiver agreements it would not be equitable to allow attorneys' fees, costs and expenses either under the federal Declaratory Judgment Act or applicable Missouri law.

*Ultimate Findings and Conclusions*

It is found in this case that there was no false representation of fact in the application for insurance on the 1960 Pontiac either in writing in the application (P.Ex. 5), or orally, or in the earlier application on the 1961 Chevrolet. (P. Ex. 4).

It is hereby concluded as a matter of law and is hereby

Adjudged and declared that

(1) This court has jurisdiction of this case.

(2) Missouri law governs the rights of the parties to this controversy.

(3) Plaintiff insurer has the burden of proving by a preponderance of the evidence (a) the existence of a justiciable controversy and (b) one or more false representations material to the risk relied on in issuance of the policy in question.

(4) Plaintiff insurer has met the burden of proving existence of a justiciable controversy.

(5) Plaintiff insurer has failed to meet the burden of proving any fraud or false representation of any material fact by defendant Simon Main or any other defendant.

(6) Plaintiff insurer has failed to prove that it relied on any representation of any past or existing fact concerning Phillip Mabry's use of the insured vehicle in the issuance of its policy No. 352667 issued as aforesaid.

(7) Plaintiff insurer is obligated on its policy of liability and collision automobile insurance No. 352667 issued to Simon Main effective July 3, 1963, and renewed and extended January 3, 1964, until July 3, 1964, to perform all covenants therein in respect of a casualty occurring on or about February 2, 1964, as a result of which defendants Ronald D. Yelick and Robert G. Kolie claim damages and injuries.

(8) Plaintiff Preferred Risk Mutual Insurance Company, a corporation, is not obligated to pay expenses and attorneys' fees expended or incurred in defense of the state court actions.

(9) Under the circumstances, the plaintiff insurer is not obligated to pay to the defendants, or any of them, the expenses and attorneys' fees incurred in the defense of this declaratory judgment action.

(10) Plaintiff insurer is entitled to return of the sum of $104.60 heretofore deposited by it in the registry of this Court.

(11) Plaintiff insurer is liable for the costs of this action of all defendants.