George GIOKARIS, Respondent,

v.

Michael E. KINCAID, Defendant,

State Farm Mutual Automobile Insurance Company, a Corporation (Garnishee), Appellant.

No. 47282.

Supreme Court of Missouri,

Division No. 2.

Jan. 11, 1960.

Opinion Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 8, 1960.

Thos. E. Deacy and Deacy & Deacy, Kansas City, for appellant.

Charno and Charno, George H. Charno, Jr., James P. Jouras, Kansas City, for respondent.

BOHLING, Commissioner.

This is a garnishment proceeding in aid of an execution issued upon a judgment for $17,500 for personal injuries sustained on January 5, 1956, by George Giokaris, a pedestrian, in Kansas City when struck by a 1948 Chrysler sedan automobile operated by Michael E. Kincaid, a minor, the original defendant, but owned by his grandmother Mrs. Emma Hutchinson, and an allowance of $500 to Keith Martin, guardian ad litem for said defendant. Judgment in this garnishment proceeding on a trial without a jury was entered for $17,500 in favor of the judgment creditor and for $500 in favor of the guardian ad litem and against State Farm Mutual Automobile Insurance Company, a corporation, of Bloomington, Illinois, the garnishee. The garnishee has appealed.

The main controverted issues turn on whether garnishee is liable under the insuring agreements covering the "Use of Other Automobiles" in two of its liability policies, next mentioned, in force and effect at the time of plaintiff's injury.

Garnishee's policy No. 368 139–B29–16 was issued to Michael E. Kincaid, the insured, on a 1948 Plymouth convertible coupe.

Garnishee's policy No. 331 272–B20–16 was issued to Don C. Kincaid and Virginia L. Kincaid, or either of them, the insureds, on a 1955 Chevrolet 2-door automobile owned by said Don C. and Virginia L. Kincaid, the parents of Michael. There was attached to this policy an endorsement providing that Insuring Agreement No. V thereof should apply to Michael E. Kincaid, subject to all the provisions of said policy.

The liability in each policy for bodily injury (Coverage A) sustained by one person in any one accident was not to exceed $10,000.

Mrs. Emma Hutchinson, Michael's grandmother, had permitted the liability policy on her 1948 Chrysler sedan to lapse eight days prior to plaintiff's injury. At the time of plaintiff's injury she was staying at the Kincaid home. Michael's Plymouth was not in operating condition January 5, 1956. He asked his mother's opinion about using the Chrysler and either he or his mother obtained permission from his grandmother for him to use it to go to school that morning. His grandmother had given his mother one set of the keys, but he was given his grandmother's keys. This was the first time he drove the Chrysler after his grandmother came to the Kincaid home. Plaintiff was injured while Michael was on his way home after school. The Chevrolet was used by Mr. Kincaid in going to and from work and was being so used at the time of plaintiff's injury. Additional facts will be developed in the course of the opinion.

Garnishee's policy on Michael's Plymouth automobile, so far as material to the principal issues, provided:

"IV. Use of Other Automobiles. If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resi-

·dent of the same household, owns an automobile covered by this policy and ·classified as 'pleasure and business,' ·such insurance as is afforded by this ·policy under coverages A, B, C, F, G ·or H with respect to said automobile .applies to any other automobile subject ·to the following provisions: * * *

"(c) Insuring Agreement IV does ¬not apply: (1) to any automobile ·owned by, registered in the name of, hired as a part of a frequent use of ¬hired automobiles by, or furnished for regular use to either the named in¬sured or a member of the same house¬hold other than a private chauffeur or ·domestic servant of such named in¬:sured or spouse; * * *."

The like provisions of garnishee's policy ¬issued on Mr. and Mrs. Kincaid's Chevro¬let automobile provided:

"V. Use of Other Automobiles. If the named insured is an individual who ·owns the automobile classified as ·'pleasure and business' or husband and ¬wife either or both of whom own said ·automobile, such insurance as is af¬forded by this policy for bodily injury ¬liability, for property damage liability .and for medical payments with respect ¬to said automobile applies with respect ¬to any other automobile, subject to the ·following provisions: * * *

"(b) Insuring Agreement V does ¬not apply: (1) to any automobile owned by, registered in the name of, hired as part of a frequent use of hired .automobiles by, or furnished for reg¬¬ular use to the named insured or a ¬member of his household other than a ·private chauffeur or domestic servant ·of the named insured or spouse; * * *."

We do not set out a stipulation filed by ¬the parties as we develop the material facts ¬therein in the course of the opinion.

■ Appellate courts review cases tried ¬upon the facts without a jury as in suits of an equitable nature. Section 510.310, subd. 4, RSMo 1949, V.A.M.S. This case was submitted to the court on depositions and exhibits mentioned in the stipulation. The deference usually accorded the determination of a factual issue by a trial court because of its better position to judge of the credibility of witnesses appearing before it is not applicable to cases submitted upon depositions and exhibits. Pitts v. Garner, Mo., 321 S.W.2d 509, 514 [1]; Lukas v. Hays, Mo., 283 S.W.2d 561, 565 [6].

The garnishee contends that plaintiff had the burden to establish coverage and every fact essential to establish the liability of the garnishee, quoting from Mistele v. Ogle, Mo., 293 S.W.2d 330, 332 [1]. We said in Kelso v. Kelso, Mo., 306 S.W.2d 534, 536 [2], that "where garnishee seeks to escape coverage solely because of policy exclusions, the burden was upon it to prove facts which would make those provisions applicable." The garnishee does not undertake to show why the holding in the Kelso case is not applicable to its defense based upon exclusionary provisions in its policies.

The trial court followed Pray v. Leibfarth, D.C., 106 F.Supp. 613, and the same case on appeal, Travelers Indemnity Co. v. Pray, 6 Cir., 204 F.2d 821, mentioned hereinafter, and held garnishee's policies ambiguous. The court also found, with respect to facts in controversy, that Mrs. Hutchinson was residing temporarily in the home of her daughter; that she was not a member of the same household as Michael within the meaning of the insuring agreements of said policies, and that said Chrysler automobile was not furnished for regular use to her daughter or to her grandson Michael.

Briefly stated the garnishee contends the trial court erred because the provisions of its insuring agreements (¶ IV, (c) (1) of the policy on the Plymouth, and ¶ V, (b) (1) of the policy on the Chevrolet, quoted supra) were clear and unambiguous; and, since under all the evidence Michael, his

mother and his grandmother were all members of the same household within said provisions of said policies, there was no coverage because the Chrysler automobile operated by Michael at the time of plaintiff's injury was owned by his grandmother, a member of the same household, and, further, was furnished by his grandmother for regular use to his mother, a member of the same household.

We think there is no sufficient difference under the facts of record in the wording of the provisions involved in the two policies as to change the result upon a consideration of the provisions in one of the policies. The briefs proceed on this theory. We consider the provisions of the policy on the Plymouth.

■ I. Are the policy provisions involved ambiguous?

We have said the rules for construing insurance policies "are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. * * * However, * * * the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.'" Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99, 101 [4, 5], 57 A.L.R. 615 (omitting citations). Central Surety & Ins. Corp. v. New Amsterdam Cas. Co., 359 Mo. 430, 222 S.W.2d 76, after quoting (78 [1] ) the foregoing from the Wendorff case, states (80 [6] ): "Where possible, it is our duty to give every clause of the policy some meaning." These cases involved policy provisions excepting liability. See Davis v. Mutual Life Ins. Co., 234 Mo.App. 748, 119 S.W.2d 488, 493 [4], quoting Williams v. Union Central Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693, 700.

Aler v. Travelers Indemnity Co., D.C. Md.1950, 92 F.Supp. 620, 622, was an early declaratory judgment action involving provisions of a policy extending and limiting, by exclusionary provisions, the insured's coverage on his Mercury automobile in his use of "any other automobile, subject to the following provisions * * * (b) This insuring agreement does not apply: (1) to any automobile owned by, hired as a part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse". The insured was driving his mother-in-law's Plymouth automobile at the time of the accident. The mother-in-law had been a member of the insured's household for a year or more, paying no rent or board, and at the time of the accident was ill and confined to her bed. The insured, his wife and his son had been using both cars when needed. The court, after analyzing the issues involved in an opinion that has become a leading case, held that the exclusionary clause was not ambiguous and excepted "from coverage the use of any other automobile (1) owned by the insured or a member of his household or (2) furnished for regular use to the insured or a member of his household." 623 [2, 3].

Garnisher stresses Pray v. Leibfarth, D.C.E.D.Mich.1952, 106 F.Supp. 613 [3], and the majority opinion therein upon appeal, Travelers Indemnity Co. v. Pray, 6 Cir., 1953, 204 F.2d 821. The Pray case and the Aler case involved identical policy provisions. The garnishee, insurer, had issued a policy on Leibfarth, Jr.'s Pontiac automobile. Plaintiff was injured while Leibfarth, Jr., accompanied by Leibfarth, Sr., was driving the father's Cadillac automobile. The father, mother and son each had his or her own car. The opinion of the district court (106 F.Supp. 615 [2, 3] ) and the majority opinion of the circuit court (204 F.2d 824 [4, 5] ) refused to follow the Aler case, supra. Each held the exclusionary provisions ambiguous, and emphasized the

lack of a comma before the words "the named insured" in the phrase "or furnished for regular use to the named insured * * *" for the holding. The court stated (204 F.2d loc. cit. 824):

"In order to make a complete sentence of the questioned provision, grammatical construction would seem to require that the three phrases (1) 'to any automobile owned by,' (2) 'hired as a part of a frequent use of hired automobiles by,' and (3) 'or furnished for regular use to', have as their object the words 'the named insured or a member of his household' etc. Without inserting a comma (*which is not to be found in the policy*) before the words 'the named insured', the provision cannot be so construed; for unless the comma be inserted as specified, the first two of the three aforementioned phrases are left dangling without an object."

A strong dissenting opinion in the Pray case (204 F.2d 825) approved the construction given the exclusionary clause in the Aler case, supra, quoting Ewing v. Burnet, 11 Pet. 41, 54, 9 L.Ed. 624, to the effect that instruments are construed from their four corners, and if the true meaning is apparent, " 'the punctuation will not be suffered to change it.' "

Garnisher's case of Continental Cas. Co. v. Suttenfield, 5 Cir., 1956, 236 F.2d 433, 437, states: "The language we are to construe has been found ambiguous. Travelers Indemnity Co. v. Pray, 6 Cir., 1953, 204 F.2d 821." However, the court did construe the provision involved and held the use of the hired automobile was not a "frequent" use within the meaning of the exception.

In Leteff v. Maryland Casualty Co., La. App.1957, 91 So.2d 123, 126, plaintiff was injured while riding in a Plymouth station wagon operated by Leslie W. Ventress, Jr., but owned by his father, and involved an insurance policy issued by the Maryland Casualty Company to Leslie W. Ventress, Jr. on a 1950 Chevrolet truck. The "Use of Other Automobiles" insuring agreement contained the following exceptions: "(b) This insuring agreement does not apply: (1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household * * *." The court, after an exhaustive review of cases involving like clauses (91 So.2d loc. cit. 128 et seq.), held the exclusionary provision not ambiguous, stating (loc. cit. 142):

" 'The language of the exclusion is not ambiguous. It is somewhat cumbersomely written and must be read with close scrutiny in order to grasp its full meaning, but there is nothing wrong with its grammatical construction. There is a well known rule of grammar which says that if it can be avoided verbs and prepositions are not separated from their object or objects by punctuation. The exception to that rule is where a parenthetical or explanatory phrase is thrown in after the preposition and before its object, then such phrase for clarity must be set apart by commas. There is another rule that a series of words or phrases are separated by commas, except there should be no comma before the first nor after the last of the series. In the provision here under consideration the qualifying phrase "the named insured or a member of his household * * *." is the object to the first preposition "by". It is the object of the second preposition "by" and it is the object of the preposition "to". It would be wholly improper to separate with the comma the preposition "to" from its object "the named insured or a member of his household * * *".' "

Like reasoning resulted in a like conclusion on similar policy provisions in American Mut. Liability Ins. Co. v. Meyer, 3 Cir., 1940, 115 F.2d 807.

In the Leteff case, the court, bearing in mind the established rules of interpretation and the reason for the exclusion clauses,

considered the Pray case to stand alone, to be against the great weight of authority, and in error (91 So.2d loc. cit. 139, 140).

Garnishee's policy No. 368 139–B29–16 was issued fundamentally to cover Michael E. Kincaid, the insured, while operating the automobile specifically designated therein, his 1948 Plymouth. Clause IV of the policy's insuring agreements extended certain specified coverages therein mentioned (including coverage A, bodily injury) to insured's "Use of Other Automobiles," subject, however, to certain limitations and exclusions with respect to this enlarged coverage. The purpose of the exclusionary clause so far as involved is to protect the insurer against the loss of premiums and against the increased and uncompensated hazard resulting from an insured's use of other automobiles by excluding coverage in the use of other automobiles where the insured or members of the same household own two or more automobiles which are used interchangeably with only one particular automobile insured. Lumbermens Mut. Cas. Co. v. Pulsifer, D.C.Me., 41 F.Supp. 249, 251 [1]; Rodenkirk v. State Farm Mut. Auto. Ins. Co., 325 Ill.App. 421, 60 N.E.2d 269, 274 [3]; Aler v. Travelers Indemnity Co., supra.

The exclusionary provision under consideration, involving prepositional phrases and objects, may be parsed readily. We conclude it is not ambiguous and excludes from coverage the insured's use of any other automobile (1) owned by the insured or a member of the same household, or (2) furnished for regular use to the insured or a member of the same household. See, in addition to the cases mentioned supra, Ransom v. Fidelity & Cas. Co., 250 N.C. 60, 108 S.E.2d 22, 25 [4]; Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Robertson, 4 Cir., 259 F.2d 389, 392 [3]; Northwest Cas. Co. v. Legg, 91 Cal. App.2d 19, 204 P.2d 106, 108; Vern v. Merchants Mut. Cas. Co., Sup.App.T., 118 N.Y.S.2d 672, 674; Campbell v. Aetna Cas. & Sur. Co., 4 Cir., 211 F.2d 732, 735 [2, 3]; Rodenkirk v. State Farm Mut. Auto. Ins.

Co., 325 Ill.App. 421, 60 N.E.2d 269, 274 [3, 4]; Farm Bureau Mut. Auto. Ins. Co. v. Marr, D.C.N.J., 128 F.Supp. 67, 71 [4]. With the exception of the first two, these cited cases and others are reviewed in the Leteff case, supra, 91 So.2d 128 et seq. See 5A Am.Jur., Automobile Insurance, 86, § 88; Annotation, 173 A.L.R. 901.

■■ II. Was Mrs. Emma Hutchinson "a member of the same household," the Kincaid household, within the exclusionary provisions of the policies?

Garnishee contends the trial court erred in finding that Mrs. Hutchinson was not a member of the same household as Michael and Mrs. Kincaid within the meaning of the exclusionary provisions of the policies. Garnishee stresses testimony to the following effect: Mrs. Kincaid thought her mother was a member of her family and was living in the Kincaid home when plaintiff was injured, and plaintiff's counsel's statement "We will admit she was a member of the family." (Mrs. Kincaid also considered her cousin, who lived in Tulsa, a member of the family.) Mrs. Hutchinson voluntarily gave her daughter $40 a month. Garnishee says that she became a member of the family; that when she was at the Kincaids' she ate her meals with the rest of the family; that she enjoyed the same privileges of the home as were enjoyed by the Kincaid family; that while at the Kincaid home she considered herself a legal resident of Kansas, having made application for and collected Kansas social security and having registered to vote in Kansas, preferring to live in Kansas; that she made application for social security in Missouri after she moved from the Kincaids' to Missouri in September, 1956. Garnishee argues that the depositions established beyond any reasonable doubt that Mrs. Hutchinson was a member of the Kincaid household on January 5, 1956; and it was not necessary that Mrs. Hutchinson intended to reside permanently in the Kincaid home to be a member of the same household within the meaning of the exclusionary clause, the clause not making any such requirement.

Other testimony is stressed by the garnisher: The Kincaids, father, mother, Michael and twins, Suzan and Larry, lived on Nall Street, Roeland Park, Kansas. Mrs. Hutchinson's husband, Howard E. Hutchinson, died in March, 1955. Mrs. Hutchinson was financially unable to continue to reside in their furnished apartment in Kansas City, Missouri. After failing to find a suitable place to live, Mrs. Kincaid, her only living child, invited her mother to stay with them until she found a place. Mrs. Hutchinson agreed to this, conditioned upon being allowed to give her daughter $40 a month until she found a suitable place to live. The Kincaids applied the $40 on their household expenses. Mrs. Hutchinson owned no furniture, and brought her wearing apparel, a few pictures, grips, a trunk and the Chrysler sedan to the Kincaid home. The Kincaids had converted a garage, attached to the house just off the kitchen, into a recreation room. The sleeping arrangements had to be rearranged upon Mrs. Hutchinson's arrival. Michael was moved into the recreation room and Mrs. Hutchinson was given his downstairs bedroom. The recreation room was not used in the winter time because of the cold and the arrangement for Michael's sleeping there was not satisfactory. All considered this a temporary arrangement.

Asked whether everybody used the living room when they wanted to, Mrs. Hutchinson testified: "With the exception of myself, I—I didn't have the freedom only at times of the whole house, they had their guests and up to a certain point I guess at times I sat in there." Mrs. Hutchinson usually prepared her own breakfast, which she ate late. She generally ate her lunch by herself, but sometimes her daughter and she had lunch together. She ate her evening meal with the family when she was at the house, but when she was working for the evening, she had the meal with the children where she was baby sitting.

Mrs. Hutchinson's income consisted of social security payments and earnings from baby sitting. She was employed as a baby sitter several nights a week.

Mrs. Hutchinson considered herself a citizen of Kansas. She preferred to find a place to live nearby because she had acquired many baby sitting customers there. She applied for and collected social security in Kansas and, as she wanted to be able to vote, she registered to vote in Kansas.

Mrs. Hutchinson rented a combination living and sleeping room, with kitchen privileges, in Kansas City, Missouri, in September, 1956, paying $40 monthly therefor. She made application for social security in Missouri.

Mr. and Mrs. Kincaid testified that the arrangements made with Mrs. Hutchinson were temporary and were brought about by her not finding a suitable place to live. Mrs. Hutchinson testified: "I had no intentions of living with my family," the Kincaids; that her daughter told her to stay with them until she could find a suitable place; that she never intended to live there permanently, and that she never considerd her occupancy of a room at the Kincaids' as being permanent.

While Mrs. Hutchinson was at the Kincaids' she was continuously looking for a place to live. She and her daughter were constantly answering advertisements. Mrs. Hutchinson could not drive an automobile, and practically every week Mrs. Kincaid would drive her around to inspect different places in an effort to find a suitable place for her.

We think it is well stated in Varble v. Stanley, Mo.App., 306 S.W.2d 662, 665 [2] (citing authority): "* * * [A]n insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly

against the insurer." See also State ex rel. Mills Lumber Co. v. Trimble, 327 Mo. 899, 39 S.W.2d 355, 358 [4]; Mathews v. Modern Woodmen of Am., 236 Mo. 326, 139 S.W. 151, 155(1), Ann.Cas.1912D, 483; Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 183 [2], 154 A.L.R. 1088.

In Lumbermens Mut. Cas. Co., v. Pulsifer, D.C.Me.1941, 41 F.Supp. 249, 250, a father's policy use of any other private passenger automobile insuring agreement provided, so far as essential here, that: "The insurance does not apply (a) to any automobile (1) owned in full or in part by * * * the named insured or any member of the household thereof * * *." A married son, his wife and child, because of slender resources, returned to his parents' home, a single family farm house, in December, 1940, while the son sought employment in nearby Lisbon, the arrangements being made between the son's wife and his mother. The son obtained employment in Lisbon in two weeks, but was unable to rent a place therein until the following June. The living expenses were shared by the two families and the two women shared the shopping and household duties. The parents exercised no control over the young people. Neither family used the other's automobile without consent. The accident involved occurred on March 13, 1941, while the father, at the son's request, was using the son's car for the first time on an errand for the son. In holding the exclusionary provision did not relieve insurer of liability, the court said (251):

"Whether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.'

"Here two families came together temporarily until the newcomer could find another place of abode, which was expected to be a matter of only a few weeks. There was no one head of both groups; no permanence; no pursuit of a common object; no such union of the two families as would make them one. It was a temporary arrangement for the convenience of the son and his family while getting located elsewhere. Each family retained its own organization under its own head and did not merge to make one family or one household in any such way as the word is used in the policy.

"It should not be overlooked that the language of this endorsement was framed by the Company itself which, by definition or otherwise, could have made the term 'member of the household' less ambiguous." See Island v. Firemen's Fund Indem. Co., 30 Cal. 2d 541, 184 P.2d 153, 173 A.L.R. 896, 900, 901, 173 A.L.R. 896.

Webster's "New International Dictionary," 2d Ed., defines "household:" "2. Those who dwell under the same roof and compose a family; a domestic establishment; family." "Family" is defined: "2. The body of persons who live in one house, and under one head or manager; a household, including parents, children, and servants, and, as the case may be lodgers or boarders. 5. A group comprising immediate kindred; esp., the group formed of parents and children, constituting the fundamental social unit in civilized societies." See Ferbrache v. Grand Lodge, 81 Mo.App. 268, 271.

Garnishee stresses cases involving provisions excluding from coverage the injury or death of a member of the family or household of the insured. The purpose of such clauses has been considered to safeguard the insurer against collusion and the natural partiality of an insured to members of the insured's household or family circle. The first cases cited are: State Farm Mut. Auto. Ins. Co. v. James, 4 Cir., 80 F.2d 802, 803; Johnson v. State Farm Mut. Auto.

Ins. Co., 8 Cir., 252 F.2d 158, 160 [3–5]; Kelso·v. Kelso, Mo., 306 S.W.2d 534, 536 [3]; Senn v. State Farm Mut. Auto. Ins. Co., Ky., 287 S.W.2d 439, 440; Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N.W.2d 855, 857 [3, 4], 50 A.L.R.2d 108; Cartier v. Cartier (Lumbermens Mut. Cas. Co.), 84 N.H. 526, 153 A. 6, 7. In the Kelso, Senn, Tomlyanovich, and Cartier cases the plaintiff and the insured defendant were brothers. In the Johnson case the plaintiff was the daughter of the insured defendant and the evidence was viewed in the most favorable light for the prevailing party. In the James case the plaintiff was a boarder in insured's home and was "treated in all respects as a member of the family group, living on the most intimate terms with the other members who were connected by ties of blood or marriage" (80 F.2d loc. cit. 803). The Cartier (supra) and like cases are distinguished in the Pulsifer case (supra, 41 F.Supp. loc. cit. 252), in that the purpose of the two exceptions differed, the purpose of the provision in the Cartier and like cases being "to exclude liability for accident to one who was so closely associated with the insured that a certain degree of collusion, or non-resistance, could be expected and was guarded against." The facts distinguish the Aler (92 F.Supp. 620) and Leteff (91 So.2d 123) cases, discussed supra, on the instant issue. Rathbun v. Aetna Cas. & Sur. Co., 144 Conn. 165, 128 A.2d 327, 329 [4], involving a brother and sister, lends support to garnishee's contention.

Mindful that insurance policies are to be construed, if reasonably possible, to accomplish the designated protection, and provisions avoiding liability on the coverage afforded are construed most strictly against the insurer, we conclude the facts of record did not exclude garnishee's liability as a matter of law. The garnishee's agent, who wrote and countersigned both of the policies involved, was informed when the policy on the Chevrolet was obtained that Michael drove other automobiles, including the 1948 Chrysler, and assured the policyholders that

the policy would cover that. All the testimony on the issue is that Mrs. Hutchinson was only temporarily living at the Kincaids' and no one considered this arrangement a permanent one. See the Pulsifer case, supra. We think an ordinary insured, who had a once-in-a-while occasion to use the automobile of a person temporarily residing in his house, would consider this "Use of Other Automobiles" insuring agreement in his policy to protect him upon such occasions. The word "family," synonymous with "household," is of varied signification and may have a narrow or broad meaning. Ferbrache v. Grand Lodge, 81 Mo.App. 268, 271. Mrs. Hutchinson was not treated in all respects as a member of the Kincaid family group, and the evidence does not establish that her social intercourse was merged with that of the Kincaid domestic circle or that she became subservient to the head of the Kincaid family. We conclude Mrs. Hutchinson was not "a member of the same household" as Michael and Mrs. Kincaid and sustain the trial court's finding on this issue under a view of the testimony most favorable to the insured when construing the term most strictly against the insurer. If garnishee intended to exclude coverage to the extent of the defense under consideration, it should have used language clearly stating that defense. Island v. Fireman's Fund Indem. Co., supra, 30 Cal.2d 541, 184 P.2d 153, 173 A.L.R. 900, 901.

■ III. Was Mrs. Hutchinson's Chrysler furnished for regular use to Mrs. Kincaid, a member of the same household as Michael? Garnishee cites Rodenkirk v. State Farm Mut. Auto. Ins. Co., 325 Ill. App. 421, 60 N.E.2d 269, 274 [3], and Farm Bureau Mut. Auto. Ins. Co. v. Marr, D.C. N.J., 128 F.Supp. 67, 70 [3, 4]; and relies upon testimony that Mrs. Hutchinson and Mrs. Kincaid each had a set of keys to the Chrysler; that Mrs. Hutchinson could not drive, and that Mrs. Kincaid drove her wherever she wanted to go. We do not develop garnisher's contention that garnishee did not timely present this issue to

the trial court. We find no affirmative testimony that the Chrysler was regularly used by Mrs. Kincaid. The testimony was that the Chrysler was used when Mrs. Hutchinson wanted to go some place, primarily in looking for places for her to live, and, since she could not drive, Mrs. Kincaid would drive the Chrysler for her. The day plaintiff was injured was the first time Michael used the Chrysler after his grandmother's arrival at their home and her permission for its use was asked for and obtained. This was substantial testimony supporting the trial court's finding on this issue, which we affirm.

IV. The "Temporary Substitute Automobile" insuring agreement of the policy on the Plymouth provided, so far as material: "III. Automobile Defined. (a) Automobile. Except where stated to the contrary, the word 'automobile' means: (1) Described Automobile—the motor vehicle * * * described in the declarations; * * * (3) Temporary Substitute Automobile—under coverages A, B and C, an automobile not owned by the name insured or a member of the same household while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Garnishee contends in its brief that Mrs. Hutchinson, who owned the Chrysler used by Michael as a substitute for his broken-down Plymouth, was a member of the same household as Michael, and plaintiff may not recover. Our holding that Mrs. Hutchinson was not a member of the same household as insured, Michael E. Kincaid, sufficiently disposes of the issue adversely to garnishee.

The foregoing disposes of all issues presented for determination upon this appeal.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.