**David KERN, a Minor, by Arthur Kern, his Next Friend, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

No. 19102.

United States Court of Appeals Eighth Circuit.

Aug. 15, 1968.

Thomas J. Motherway, of Hullverson, Richardson & Hullverson, St. Louis, Mo., for appellant; James E. Hullverson, of the same firm was on the brief with Thomas J. Motherway, St. Louis, Mo.

Ralph C. Kleinschmidt, of Evans & Dixon, St. Louis, Mo., for appellee and filed brief.

Before VAN OOSTERHOUT, Chief Judge, HEANEY, Circuit Judge, and REGISTER, Chief District Judge.

REGISTER, Chief District Judge.

This appeal is from a final judgment entered by the district court in which it was decreed that appellee's policy of insurance No. AO2–243–55295 does not apply to nor insure against any legal liability on the part of Robert Appleby with respect to the claim of the appellant, David Kern. Jurisdiction of this declaratory judgment action is based on diversity of citizenship and the requisite amount in controversy. Judge Meredith, in his memorandum opinion reported at 274 F.Supp. 360, correctly and adequately states the relevant facts and questions presented. Reference will be made in this opinion to only those facts neces-

sary for an understanding of the issues before us.

This suit arose out of an accident in which David Kern, a minor pedestrian, was seriously injured when struck by a motor vehicle operated by Robert Appleby. Appleby owned a 1962 Rambler station wagon which was insured by Liberty under a standard automobile liability policy applied for and delivered in Missouri. The Rambler automobile was not the vehicle involved in the accident. The involved vehicle was a Volkswagen bus, or station wagon, owned by the Ferguson Church of the Nazarene, and at the time was being used as a school bus for the transportation of students attending a parochial school operated by the church. At the time of the accident, Appleby was driving the Volkswagen in the course of his employment by the Ferguson Church of the Nazarene.

Plaintiff Kern instituted this action in the Circuit Court of the City of St. Louis against Liberty, and named therein Robert Appleby a nominal defendant. Upon application of Liberty the cause was removed to federal court and Appleby was realigned as a party plaintiff. In his complaint, plaintiff asks the court to construe the policy of insurance issued by Liberty and to declare the rights of the parties herein; that it find that the policy covered the insured (Appleby) under the circumstances of the described accident; and that it order Liberty to defend the suit which Kern has pending against Appleby and to pay, within the policy limits, any judgment for which Appleby may be held liable to Kern as a result of such suit. In its answer and counterclaim Liberty alleged that it is not obligated to defend Appleby or to pay on behalf of Appleby any sum which he may become obligated to pay to David Kern as damages because of injuries sustained in the subject accident.

The following provisions of the policy are decisive of the issues involved:

PART I—* * *

"Liability Coverage

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages, because of bodily injury or property damage, arising out of the ownership, maintenance or use of an owned automobile or a non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

"Definitions

"When used with respect to Part I:

" 'non-owned automobile' means an automobile not owned by or furnished or available for the regular use of either the named insured or any resident of the same household, and includes, while used therewith, a home trailer not owned by the named insured or a utility trailer, but 'non-owned automobile' does not include a temporary substitute automobile;"

"Exclusions

"This policy does not apply:

"Under the Liability Coverage and, except with respect to bodily injury or death through being struck by a highway vehicle, under the Medical Expense and Accidental Death Benefit Coverages,

"(h) to a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in any other business or occupation, but this exclusion does not apply to a private passenger automobile operated or occupied by the named insured or his private chauffeur or domestic servant, or a utility trailer used therewith;"

Appellant contends that the trial court erred in its findings and conclusions

that (1) there was no "non-owned automobile" coverage, and (2) that the non-owned vehicle was not a "private passenger automobile" and therefore not within the exception to the employment exclusion.

It is undisputed that the policy of insurance here involved is a Missouri contract; that all policy conditions were complied with; that all significant events occurred in Missouri; and that Missouri law is applicable and controlling in the interpretation and construction of this policy.

In support of his first contention appellant argues, in substance, that because of the wording and punctuation of the following policy provision: "non-owned automobile means an automobile not owned by or furnished or available for the regular use of either the named insured or any resident of the same household," the vehicle here involved was insured, but that if it is not, there is a patent ambiguity in the policy and therefore, under the preferential rules of construction applicable in Missouri, the policy must be interpreted strictly in favor of the insured. Appellant's reasoning is that if so interpreted, the policy extends coverage to all vehicles, owned and non-owned; that the use of the disjunctive "or" requires an interpretation that coverage exists if the vehicle was either owned *or* non-owned; and that, since the vehicle here involved was non-owned, "* * * the vehicle fits the first part of the disjunctive definition, and qualifies as a non-owned automobile."

The well-established general principles of law applicable here, together with specific consideration of the rules of construction by which insurance contracts are to be measured in Missouri, were clearly stated by Judge Sanborn of this court in Massachusetts Bonding and Insurance Company v. Julius Seidel Lumber Co., 279 F.2d 861, at page 865, as follows:

"Perhaps the classical statement of the rule applicable to the construction of contracts of insurance is that of Mr. Justice Sutherland in Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416. He said:

'* * * It it true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. (Citations.) This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.'

'Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. (Citation.) * * *'

"The Supreme Court of Missouri has stated the rule as follows:

'* * * The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. (Citation.) However, as said in 14 R.C.L., § 103, p. 931, the rule "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists."

"Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 101, 57 A.L.R. 615, 619; Aetna Life Insurance Company of Hartford, Connecticut v. Durwood, Mo., 278 S.W.2d 782, 786."

Also see: McMichael et al. v. American Insurance Company, 351 F.2d 665, 669 (8 Cir. 1965); Looney et al. v. Allstate Insurance Company, 392 F.2d 401, 405 (8 Cir. 1968); and Giokaris v. Kincaid,

331 S.W.2d 633, 86 A.L.R.2d 925 (Mo. 1960).

■■ It is our opinion that an interpretation such as that suggested by the appellant violates many of the cardinal rules of interpretation of insurance contracts. Under Missouri law, and applicable principles generally, it is our duty, where possible, to give every clause of the insurance policy some meaning. Central Surety Insurance Corporation v. New Amsterdam Casualty Co., et al., 359 Mo. 430, 222 S.W.2d 76, 80 (1949). If the policy applied to all vehicles, both owned and non-owned, there would be no reason or purpose in defining such vehicles; such an interpretation would render meaningless this defining clause of the contract. It would, in effect, judicially strike the "non-owned automobile" definition from the policy. The phrase "owned and non-owned" automobiles appearing in the Insuring Agreement would have no significance and would be superfluous for the same reason. Further, such an interpretation, in our opinion, is strained and unreasonable, and requires "the exercise of inventive powers for the purpose of creating an ambiguity where none exists." Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99, 101, 57 A.L.R. 615 (1927). A recognized basic rule applicable to the interpretation of contracts requires that the instrument under consideration be construed as a whole. *Giokaris*, supra. The interpretation urged by appellant is based on and limited to the disjunctive word "or," and would require us to disregard all other associated parts of the policy.

It would also be contrary to and require the disregard of the judicially recognized and obvious underwriting purpose of such policy provisions, which is to protect the insurer from a situation where the insured could purchase one policy for a described vehicle and be covered by the same policy without qualification while operating any and all other automobiles under his control or available for his use. Lincombe v. State Farm Mutual Automobile Insurance Co., et al.,

La.App., 166 So.2d 920, 924; Rodenkirk for Use of Deitenbach v. State Farm Mutual Automobile Insurance Co., 325 Ill.App. 421, 60 N.E.2d 269, 274; and Glisson v. State Farm Mutual Automobile Insurance Co., 246 S.C. 76, 142 S. E.2d 447, 451.

■ On this issue of alleged ambiguity in the definition of a non-owned automobile, as contained in the policy, we find in favor of the appellee and hold that the policy excludes from coverage a non-owned automobile that was "furnished or available for the regular use * * * of the named insured." For a detailed analysis of several cases involving the interpretation and construction of similar standard automobile liability provisions, see Quesenberry v. Nichols, 208 Va. 667, 159 S.E.2d 636 (1968).

The trial court determined that the Volkswagen vehicle involved in the accident did not come within the policy definition of "non-owned automobiles" because it was "furnished or available for the regular use of the insured." Appellant contends that this finding on a factual issue is error in that it "was not supported by substantial evidence, or alternatively was against the clear weight of the evidence." Brief reference to the pertinent stipulated facts will necessarily be made.

At the time of the accident the insured (Appleby) was an assistant to the pastor of the Ferguson Church of the Nazarene. The church operated a parochial school in conjunction with its other functions. In connection with its operation of the parochial school, the church provided school bus transportation for those children who requested it, on either a monthly fee or donation basis. For this purpose the church owned and maintained two Volkswagen vehicles which were driven by hired chauffeurs over scheduled routes. The vehicle here involved was so used to transport school children and occasionally for other church functions. The church had regulations that the vehicles could not be used for other purposes. Appleby was a licensed chauffeur and as one of his du-

ties of employment drove one of these vehicles, on a temporary or fill-in basis, in the absence of the regular driver. Such substitute driving occurred quite frequently—sometimes two or three days a week. Appleby had never used the vehicle for personal or private purposes, or for any purpose other than stated. On the day involved, and at the time of the accident, he was driving the vehicle over a regular route, returning to the church after completing delivery of the children to their homes from the school session. On that particular route the vehicle ran three times a day, and Appleby had driven it over that route "very, very often" prior to that day.

We have no hesitancy in expressing complete agreement with the trial court that such non-owned vehicle was excluded from coverage under the policy because it was "furnished or available for the regular use of the insured." This apparently is a common provision of standard automobile liability insurance contracts, from which has arisen a substantial amount of litigation, not because of any ambiguity in the provision itself, but because each case necessarily depends upon the facts of the situation, and there is obviously no single or exclusive criteria or test which will conclusively determine the issue.

In Hartford Accident & Indemnity Company v. Hiland et al., 349 F.2d 376 (7 Cir. 1965), a declaratory judgment action involving an exclusionary provision almost identical to that involved herein, the court stated, at page 377:

> "It is true that the term 'regular use' may be used in the sense of time, for example, steady as opposed to occasional; or in the sense of type of use, usual as against unusual. But the courts have found no great difficulty in reasonably interpreting the term in applying it to differing facts in various cases."

In Voelker v. Travelers Indemnity Company, 260 F.2d 275 (7 Cir. 1958), the plaintiff was a national guardsman on annual active duty when he was involved in an accident while driving a National Guard truck. He brought a declaratory judgment action against the liability insurer of his personal automobile under a policy with an insuring agreement extending coverage "to any other automobile," but with an exclusionary provision similar to that before us. In arriving at the conclusion that the defendant-insurer was free from liability under the exclusion clause, that court stated, at page 278:

> "What constitutes 'regular use' depends upon the circumstances of the case. Certainly the truck driven by plaintiff at the time of the collision was in the 'regular use' of the National Guard. The National Guard was only capable of acting through its members. Some of its members, including plaintiff, were specially trained to drive its trucks and vehicles. They did so on numerous occasions and were subject to do so at any time upon request. The fact that plaintiff had not previously driven this particular truck is immaterial. He was driving it in his line of duty for a period of three days. It seems reasonable to think that the truck was furnished him for his 'regular use' while acting in the performance of his duties as a member of the National Guard."

General Leasing Corporation v. Anderson, 197 Kan. 327, 416 P.2d 302, at page 307 (1966), was a case involving the application of a similar exclusionary provision and the court therein, after referring to other decisions, stated:

> "It has been generally held in other jurisdictions that a casual and occasional use of another car for which special permission has to be secured each time the car is driven is not to be considered 'furnished for regular use' under the exclusionary provision of the 'drive other car' clause of an insurance policy. (Citations.)"

Also see: *Quesenberry*, supra.

In *Giokaris*, supra, a comparable exclusionary provision was before the Supreme Court of Missouri. While the primary question in that case was whether the insured's grandmother, who

was residing only temporarily with the insured, was a "member of the same household," the issue of whether the vehicle was "furnished for regular use" was also present. Because of the circumstances there present, the court found it unnecessary to discuss the import of the exclusionary clause in detail. However, it appears that the court did emphasize infrequency of use, and the necessity of seeking permission each time the vehicle was used, as a basis for concluding that it was not "furnished for regular use."

The case of Farm Bureau Mutual Automobile Insurance Company v. Marr et al., 128 F.Supp. 67 (D.C.N.J.1955), was also a declaratory judgment action to determine liability under an automobile liability policy containing an almost identical exclusionary provision. After reviewing several decisions involving the same question, that court stated, at page 70:

"The signposts that are indicated to this Court from the foregoing are:

1. Was the use of the car in question made available most of the time to the insured?

2. Did the insured make more than mere occasional use of the car?

3. Did the insured need to obtain permission to use the car or had that been granted by blanket authority?

4. Was there a purpose for the use of the car in the permission granted or by the blanket authority and was it being used for such purpose?

5. Was it being used in the area where such car would be expected to be used?"

That court thereupon based its decision upon the application of the stated "signposts" to the facts of the case. While not adopting such "signposts" as the sole, or even the proper test, or inferring that they include all the essential criteria, they obviously refer to several of the major factors which merit consideration.

In considering this question, we emphasize and place major importance upon the following facts: The involved vehicle was owned by the insured's employer, and was furnished and always made available to its employed licensed drivers for a specified use or uses in the business of the employer, and one of those licensed drivers was the named insured. While the driving of such vehicle constituted only one of the duties of employment of the insured, and required only a portion of his time, such driving *was* a part of those duties. The vehicle was furnished and made available to the named insured under blanket authority whenever the use thereof by him was required in the performance of this aspect of his duties. Such use was not casual, but was frequent, and without exception was always and uniformly used in conformity with the rules and policy prescribed by the employer and in accordance with his duties as an employee. Such use was not merely incidental to but was essential to the performance by the insured of those duties. The vehicle was always available to the named insured for the prescribed purpose whenever its use was required for the performance of those duties. At the time of the accident the use of said vehicle was in the course of Appleby's regular duties of employment and he was driving the vehicle on the prescribed route and for the prescribed purpose. We are satisfied that even though the insured drove this vehicle as a fill-in or substitute driver, on a part-time basis, the vehicle was furnished and made available to him by his employer under broad and blanket authority for his regular use in the course of his employment. Accordingly, we hold that the Volkswagen vehicle involved in this litigation is excluded from the insuring clause of the policy issued to Appleby by Liberty.

Because of the dispositive effect of the foregoing, we find it unnecessary to consider the "private passenger automobile" clause of the insurance contract.

Judgment in favor of the appellee is Affirmed.