**NATIONAL EMBLEM INSURANCE COMPANY, Appellant,**

v.

*Edward McCLENDON, Appellee.*

No. 8095.

Court of Civil Appeals of Texas, Texarkana.

March 28, 1972.

Charles H. Clark, Tyler, for appellant.

Doyle Curry, Jones, Jones & Baldwin, Marshall, for appellee.

RAY, Justice.

Appellee, Edward McClendon (Plaintiff), sued Appellant, National Emblem Insurance Company (Defendant), for the limits of its automobile liability policy in the sum of $10,000.00. McClendon had recovered a judgment for $20,695.66 against Annette McDonald and husband Edgar McDonald in a separate suit. This judgment had been credited with $10,695.00, leaving a balance due to McClendon in the sum of $10,000.00. McClendon was seeking recovery of the $10,000.00 balance, plus interest, from National Emblem Insurance Company as the remainder due him under his original judgment against the McDonalds. The original suit arose out of an automobile collision on January 20, 1968, in which collision McClendon sustained personal injuries. Appellee McClendon sought payment of his judgment from Farmers Insurance Company and Appellant National Emblem Insurance Company. Farmers Insurance Company paid the limits of its policy in the sum of $10,000.00, but National Emblem Insurance Company denied liability. McClendon then brought suit against National Emblem Insurance Company for the limits of its liability policy issued to Edgar McDonald in the sum of $10,000.00. The jury rendered a verdict in favor of McClendon, and the trial court accordingly entered judgment against National Emblem for the sum of $10,000.00, plus interest and costs. Appellant National

Emblem Insurance Company submits nine points of error for consideration by this court.

The facts developed in the trial court established that Annette McDonald was the wife of Edgar McDonald, that National Emblem Insurance Company had issued an automobile liability policy to Edgar McDonald with coverage of $10,000.00, and that the term "named insured", as defined in Appellant's policy, included Edgar McDonald's wife "if a resident of the same household." Annette McDonald was driving her mother's car on the date of the collision and was insured under her mother's policy. McClendon contended that Annette McDonald was also insured under the National Emblem Insurance Company policy.

Appellant sought to deny liability on the basis that Annette McDonald was no longer a resident of the Edgar McDonald household, that the car that Mrs. McDonald was driving at the time of the collision belonged to her mother and was furnished to Mrs. McDonald for her "regular use" and therefore failed to come within the provisions of National Emblem's policy which would ordinarily cover Mrs. McDonald while driving a non-owned automobile.

The jury found that Annette McDonald was a resident of the same household as her husband Edgar McDonald on the date of the collision, that the car she was driving at the time of the collision was not furnished for her regular use, and that Annette McDonald was not a resident of the same household as her mother.

The record showed that Edgar McDonald was in the army and stationed at Fort Rucker, Alabama, but had orders for an overseas assignment to Vietnam. However, prior to going overseas he was to attend a school at Fort Eustace, Virginia. About six weeks before Edgar McDonald was to leave for Virginia, Annette McDonald went to Oklahoma to get her old job back while her husband was in school and during the time that he would be in Vietnam. Mrs. McDonald and her two children occupied a house in Oklahoma with her mother. The mother owned the home and a new automobile. Mrs. McDonald secured her old job and started to work. Her mother was also employed, but each had rides to and from her respective job. The testimony established that Mrs. McDonald occasionally used her mother's car in grocery shopping and going to the beauty shop; and during the twenty days that Mrs. McDonald had been in her mother's home she had used the car about five times for her individual purposes. On the occasion of the collision with the McClendon vehicle, Mrs. McDonald had received permission to use her mother's automobile to make a trip to Shreveport, Louisiana, to meet her husband who was driving the McDonald vehicle from Fort Rucker, Alabama, to Shreveport, Louisiana. The car that Mrs. McDonald was driving had about 650 miles on it when she left Oklahoma, and it had 1001 miles on it at the time of the collision. The testimony shows that Mrs. McDonald traveled approximately 350 miles from her mother's home to the point of the collision. The testimony further showed that the car was about four months old at the time of the accident and that Mrs. McDonald had only been in her mother's home for approximately 20 days.

Annette McDonald testified that she and her husband were separated only because of his pending assignment to a training school and Vietnam, and not because of a contemplated divorce or other permanent separation. Her testimony established that Edgar McDonald had continued to maintain their home in Alabama.

■ Appellant's first point of error complains of the trial court's failure to define the term "resident of the same household." Appellant objected to the court's charge for failure to define the term, but Appellant did not submit a requested definition for the court's consideration, nor did Appellant complain of such failure in its motion for new trial. Appellant's first

point of error is without merit. Rules 279 and 324, Texas Rules of Civil Procedure; and Donald v. First State Bank of Chico, 448 S.W.2d 196 (Tex.Civ.App., Fort Worth 1969, no writ).

■ Appellant's second point of error is that the jury's finding that Annette McDonald was a resident of the same household as her husband Edgar N. McDonald was against the great weight and preponderance of the evidence to the extent that it was manifestly unjust.

We think the jury was justified in reaching the conclusion that Annette McDonald was still a resident of the same household as her husband. The evidence shows that she had been living with her mother for approximately twenty days prior to the collision, but there was no evidence to establish that Annette McDonald intended to become a resident of her mother's household. On the contrary, the testimony shows that she was living with her mother until such time as she could find an apartment and that, subsequent to the collision, she did in fact find an apartment and move into it. Further, Edgar McDonald continued to maintain the family residence in Alabama and Mrs. McDonald testified that she was in no way contemplating a divorce from her husband or a permanent separation. We believe the evidence establishes that Annette McDonald only intended to occupy a portion of her mother's house temporarily, and therefore Mrs. McDonald remained a resident of the same household as her husband. Appellant's second point of error is overruled. Giokaris v. Kincaid, 331 S.W.2d 633, 86 A.L.R.2d 925 (Mo.Sup.Ct.1960).

Appellant's points of error III through VI concern Special Issue No. 3 in which the jury found that Annette McDonald was not a resident of the same household as her mother. Appellant's points VII through IX concern Special Issue No. 2 in which the jury found that the automobile which Annette McDonald was driving on the date of the collision was not furnished for her regular use.

Our research has not revealed a Texas case directly in point with the case under consideration. However, the Missouri case of Giokaris v. Kincaid, supra, seems closely analogous. In the Kincaid case, satisfaction of a judgment for bodily injuries sustained in an automobile accident was sought in a garnishment proceeding in aid of execution against the judgment debtor's automobile liability insurer. As a defense, the insurer asserted an exclusionary provision of the policy that its coverage of the named insured while driving an automobile other than the insured vehicle should not extend to an automobile "owned by . . . or furnished for regular use to either the named insured or a member of the same household." It appeared in evidence that the named insured was a minor who lived with his parents; that the automobile driven by him at the time of the collision was owned by his grandmother who, upon death of her husband, was temporarily living in the same home until she could find a suitable home of her own; and that the named insured was using the car for the first time while his own car was disabled. It also appeared in evidence that the grandmother could not drive and that the named insured's mother frequently used the car to take the grandmother on the latter's errands.

On an appeal by the insurer, a judgment rendered by the Circuit Court of Jackson County, Missouri, against the insurer in a case submitted on depositions and exhibits was affirmed by the Supreme Court of Missouri which held that it could not be found, as a matter of law, contrary to the trial court's findings, that the grandmother was a "member of the same household" as the insured, or that the car was furnished for regular use to either the named insured or a member of the same household.

■ The evidence substantiates the fact finding of the jury that Annette

McDonald was not a resident of the same household as her mother. Edgar McDonald was a career Army man and had been in the service for eleven years. As a result of his occupation, he and his family were sometimes required to be separated. At the time of the collision in question, Mrs. McDonald was obviously still very much interested in her husband, since she was making a trip from Oklahoma to Louisiana to meet him. She testified that they were not separated, nor were they contemplating divorce. She had only been in her mother's house approximately twenty days when the collision occurred. Edgar McDonald maintained the home in Alabama until the time he left to go to school in Virginia in May of 1968. In March of 1968, Mrs. McDonald had found an apartment and had moved out of her mother's home. The evidence fails to show that Mrs. McDonald intended to live permanently with her mother, and on the contrary, shows that the intention of Mrs. McDonald was to only live temporarily with her mother. Here the two families came together temporarily until the newcomer could find another place of abode. There was no one head of both groups, no permanence, no pursuit of a common object, no such union of the two families as would make them one, and no unit of permanent domestic character. It was a temporary arrangement for the convenience of Mrs. McDonald and her children until they could get located elsewhere. Each family retained its own organization under its own head and did not merge to make one family or one household. There is no showing that Edgar McDonald intended in any way to relinquish his position of authority as head of the McDonald household, nor was there any showing that Mrs. McDonald's mother attempted in any way to govern her daughter's activities. An insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. In view of the evidence and the jury's finding that Annette McDonald was not a resident of

the same household as her mother, we cannot say as a matter of law that she was. Our view of the facts leads us to conclude that the evidence was adequate to sustain the jury's answer to Special Issue No. 3. Appellant's points of error III through VI are overruled.

■ The purpose of the exclusionary clause relating to use of other automobiles is to protect the insurer against the loss of premiums and against the increases and uncompensated hazard resulting from an insured's use of other automobiles by excluding coverage in the use of other automobiles where the insured or members of the same household own two or more automobiles which are used interchangeably with only one particular automobile insured.

■ A reading of Appellant's insurance policy shows that Mrs. McDonald would be covered by liability insurance under the National Emblem policy while driving a "non-owned automobile" (such as her mother's vehicle), if that automobile were not owned by Mrs. McDonald nor furnished for her regular use.

The fact that Mrs. McDonald would seek permission to use her mother's car if she were going anywhere other than to the grocery store, beauty shop, or shopping center dispels the idea that the vehicle was furnished to Mrs. McDonald for her regular use. She did not drive her mother's car back and forth to work. She did not drive the car every day. Her testimony was that when she went grocery shopping it was for her mother's benefit as well as her own. There was no showing by Appellant that Iroe Blakeley, the mother of Mrs McDonald, intended to relinquish any measure of control over the use of her car. Neither did Mrs. McDonald assume control of the vehicle. During the twenty days that Mrs. McDonald was in her mother's home, the testimony indicates that she used the car three times to go to the beauty shop and twice to the shopping center, so that the vehicle was used approximately

five times for the exclusive benefit of Mrs. McDonald. The other testimony indicates that whatever additional use was made of the automobile was a joint use for the benefit of Mrs. McDonald and her mother or the mother's exclusive benefit. The evidence further shows that Mrs. McDonald had obtained her mother's permission to use the automobile to meet her husband in Shreveport, and that she had the collision on that trip.

It is our conclusion that the evidence supports the jury's finding that the Blakeley automobile was not furnished for the regular use of Annette McDonald.

Appellant relies heavily upon International Service Insurance Company v. Walther, 463 S.W.2d 774 (Tex.Civ.App., Austin 1971, no writ). In that case, Walther was a truck driver for Giddings Grain Company and was injured in a truck-train wreck in 1966. His medical expenses were more than his employer's medical payment benefits, so he sought the excess amount under the medical payment provision of his family automobile insurance policy. Walther's insurance policy provided medical payments to the named insured while "occupying a non-owned automobile." A "non-owned automobile" was defined in the policy as ". . . an automobile or trailer not owned by or furnished for the regular use of . . . the named insured . . ." The Austin Court of Civil Appeals held that the employer's truck was furnished for Walther's regular use as a matter of law, though the jury found the facts to the contrary. The court stated: "The term 'regular use' in the definition of 'non-owned automobile' is not limited to one specific vehicle. It is the regular use of other automobiles which is excluded by the term, and if an employer assigns an employee a specific automobile or assigns him a number of automobiles, any one of which he may use for a particular trip, in either event the automobile is furnished 'for regular use.' "

We distinguish the Walther case from the case now under consideration on the differences in the fact situations. Roy Walther was a truck driver who made regular deliveries, using one of three company delivery trucks. His employer assigned him the use of one of the three delivery vehicles to be used in making his deliveries. The delivery trucks were furnished for a principal use as distinguished from a casual or incidental use. They were furnished every day for deliveries, so that the furnishing of the trucks to Walther was a steady furnishing and uniform in course, practice and occurrence as contrasted to an irrational variation or incidental use.

In the instant case, Mrs. Blakeley did not assign her 1967 Chevrolet automobile to her daughter, Annette McDonald, to be used every day for a uniform purpose. On the contrary, the use of the automobile was irregular and not often for the same purpose. Mrs. McDonald used someone else's vehicle to go to and from her work. She only used the car with her mother's permission and had never taken it out of town prior to the time of the collision. The vehicle was not used for a single purpose, such as deliveries, but was used by both Mrs. McDonald and her mother for various purposes. There was no regular schedule for the use of the automobile. Its use was not steady (as evidenced by the low mileage) and there was no uniformity as to when Annette McDonald used the vehicle, nor was its use in conformity with established or prescribed rules. We are convinced that Mrs. McDonald's use of her mother's automobile was only a casual or incidental use. In view of our conclusion that the evidence sustains the jury's answer to Special Issue No. 2, we therefore overrule Appellant's Points of Error VII through IX.

The judgment of the trial court is affirmed.

DAVIS, J., not participating.